GIEGERICH, J.   It is true that the allegations of assault and false imprisonment may, under the authorities, be joined in the statement of one cause of action, where the nature of the action is conceded, but, where the plaintiff fails to disclose the theory of his action, it is impossible to say which allegations are set forth in chief and which in aggravation; hence to permit the pleading to stand would be to place the defendant in a state of hopeless uncertainty as to the issue to be met.   The plaintiff's brief is so equivocally drawn that no recital as to his position could be made in the order for the purpose of an estoppel of record, and accordingly he should be compelled to define his case.   See Blake v. Barnes (Sup.) 9 N. Y. Supp. 933.

The motion to require the plaintiff to separately state and number the complaint as stated in the notice should therefore be granted, unless the plaintiff within five days after the entry of the order stipulate that he intends and desires to state but a single cause of action, specifying which allegations are set forth in chief and which in aggravation; $10 costs to the defendant.   Settle order on notice.

---

(43 App. Div. 502.)

DEGRAUW v. LONG ISLAND ELECTRIC RY. CO. et al.

(Supreme Court, Appellate Division, Second Department.   October 3, 1899.)

STREET RAILROADS—RIGHT TO TRANSPORT FREIGHT AND EXPRESS.
    Under the general railroad law (Laws 1890, c. 565, § 90), allowing street surface railroads to convey "persons and property in cars for compensation," they may operate cars designed and intended exclusively for carrying express matter, freight, or property, and used exclusively for that purpose.

Appeal from special term.

Action by Mary E. S. Degrauw, as sole executrix and sole devisee under the last will of Aaron A. Degrauw, deceased, against the Long Island Electric Railway Company and others.   From a judgment sustaining demurrer to complaint, plaintiff appeals.   Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Roger A. Pryor and F. H. Van Vechten, for appellant.

Charles A. Collin, for respondents Brooklyn Heights R. Co. and Brooklyn, Q. C. & S. R. Co.

Edward M. Grout, for respondent National Exp. Co.

Alfred W. Kiddle, for respondent Long Island Electric Ry. Co.

HATCH, J.   The parties to this action have narrowed the issues to a single question.   The plaintiff has formulated this question in plain terms:   Can street surface railway companies, authorized by the general railroad law of the state, operate cars designed and intended exclusively for carrying express matter, freight, or property, and used exclusively for such purpose?   If this question be answered in the affirmative, the judgment must be affirmed; if in the negative, it must be reversed.   The court below returned an affirmative answer, and we have no doubt of the correctness of such answer.   It

must be conceded at the outset, in terms as broad as the plaintiff claims, that the defendants must justify the right which they assume to exercise by the terms of some grant of power as broad as the acts which they do and the contract which has been made. In construing the grant of power, nothing is to be taken as given, unless found in the grant or shown to be necessarily incidental thereto; and, if not so found, it will be deemed to be withheld. Mayor, etc., of City of New York v. Broadway & S. A. R. Co., 97 N. Y. 275; Same v. Dry Dock, E. B. & B. R. Co., 47 Hun, 199; Same v. Manhattan Ry. Co., 143 N. Y. 1, 37 N. E. 494. It is not doubted but that the legislature has authority to charter a street surface railroad company, and grant the power to carry freight exclusively or passengers exclusively, or unite the authority to carry both. The legislature has assumed, in special acts, to limit the right of street-railroad companies to the carriage of passengers only (Laws 1873, c. 128), where, in chartering the Long Island City & Maspeth Railway Company, the grant was "to carry passengers thereon for compensation." Similar restrictions will be found in the charters of other surface railroads. Id. cc. 301, 483, 705, 825; Laws 1874, c. 508. The act chartering the Johnstown, Gloversville & Kingsboro Horse-Railroad Company (Id. c. 255) both prohibited and restricted, its language being:

"The said railroad company is hereby prohibited from using steam as a motive power on said railroad or from transporting or conveying freight thereon, and is hereby restricted to the business of taking and conveying persons or passengers over the said railroad in street railroad cars, by the power or force of animals." Section 3.

The legislature has also assumed to grant authority to carry both passengers and freight. The language which accomplished this purpose has varied slightly, but is in substance the same grant of power. The act creating the Mt. Prospect & Carroll Street-Railroad Company, in the city of Binghamton, granted the right "to convey passengers or freight thereon, for compensation." Laws 1873, c. 276. In authorizing an incorporation of a surface street railroad in the city of Schenectady, the grant was "to carry passengers and freight thereon for compensation." Id. c. 546. In the city of Rome and the village of Catskill the language of the acts was, respectively, "and convey passengers or freight for a compensation," "and to convey passengers and freight for a compensation." Laws 1874, cc. 441, 181. In the city of Brooklyn the language was, "for conveying persons and property by horse power." It is therefore plain that, so far as resort is had to special legislation chartering street surface railroad companies, the grant of power has varied, but such legislation has assumed to confer the same right in most of the cases to carry freight as to carry passengers. The defendant the Brooklyn Heights Railroad Company was created by the act of 1884, which was the first general act relating exclusively to street surface railroads. The grant of power therein was for "the conveyance of persons and property in cars for compensation." The other two defendant railroad companies were organized under the general railroad law, the terms of which will be later considered. The acts authorizing the construction of railroads passed by the legislature in 1848 and 1850, while not in

terms mentioning street surface railroads, were assumed to apply thereto, and such companies were extensively incorporated thereunder. The language of these acts provided for the carriage of passengers and freight, and necessarily so, for they applied in terms to commercial railroads. But it was never doubted but that the grant to street surface railroads incorporated thereunder carried the right to convey both passengers and freight upon the constructed line. Such is the express decision of the court of appeals, where Judge Peckham, in speaking for the court upon this subject, said of the act of 1850:

> "We have no hesitation in saying that corporations might be legally formed under the act in question for the transportation of passengers or freight, or both, over railroads in the streets of cities where horses were to be the motive power, excepting the city of New York." In re Washington St. A. & P. R. Co., 115 N. Y. 442, 22 N. E. 356.

The same doctrine was again asserted by the court, through the same learned judge, in Transit Co. v. Dash, 125 N. Y. 93, 26 N. E. 25. The grant of power in the acts of 1848 and 1850 was to convey persons and property for compensation. There was some modification of this language in the act of 1854 (Laws 1854, c. 140), and therein it may be assumed that the act contemplated only the carriage of passengers upon such roads. The language, however, was general, and nothing contained therein indicated a fixed purpose to create a general limitation. It was rather descriptive of what it was supposed would be the business transacted by such roads, which in practical operation still remains true. If a more limited purpose could be placed upon the terms of this act, it would not be controlling; for subsequent legislative declaration has placed the subject in clear language, removing any ambiguity which might have existed by the terms of this act. The language used in the first general street surface railroad law (Laws 1884, c. 252) is as broad in terms and more specific in character than was that in the former acts of 1848 and 1850. It said that a company might be formed thereunder "for the purpose of constructing, maintaining, and operating a street surface railroad for public use in the conveyance of persons and property in cars for compensation." The general act of 1886 (Laws 1886, c. 65) made the grant in this respect still plainer, as it provided "for the transportation of passengers, mails or freight." This language was retained in the amendment passed in the same year (Id. c. 642), and in the subsequent amendment in 1889 (Laws 1889, c. 564), and so remained until the revision of the railroad law in 1890.

We are always to look at surrounding conditions when they will aid in the interpretation of a statute, and so we may consider the fact that the revision commission had before it all of the railroad legislation of the state, both special and general; and it must also be presumed to have known of the decisions of the courts interpreting these laws. That interpretation, made by the highest court of the state, had construed the words giving authority to carry passengers and freight or property as imputing a grant to transport passengers or freight or both. This being the condition

of legislation and interpretation, the revisors must be considered
as having intentionally made use of the same terms in granting
authority to convey persons and property in cars for compensa-
tion" (Laws 1890, c. 565, § 90) as such words had been interpreted
to mean by the courts. In addition to this, there was a statute,
applicable to the county of Kings alone, which provided that no
railroad company organized under the laws of the state should
stop its cars, horses, or locomotives upon any railroad crossing
of any other railroad company crossing the same on the surface
for the purpose of delivering passengers or freight. This act clear-
ly contemplated that surface railroads might carry freight as well
as passengers. The provision was in terms re-enacted in section
36 of the general railroad law, and now applies to all railroads.
The general railroad law has been several times amended, but
no amendment has assumed to change or modify the grant of
power as stated in the laws to which we have called attention. It
is a well-settled canon of construction that the revision of a law
does not ipso facto work a change in its construction. Davis v.
Davis, 75 N. Y. 221. To work a change of interpretation, there
must not only be a change in phraseology, but such a departure
from the language of the former law as indicates an intent to
establish a different rule. May v. Bermel, 20 App. Div. 53, 56, 46
N. Y. Supp. 622. In the present case the language used in the
act of 1850 was construed as conferring a grant of power upon
street surface railroads to transport passengers or freight or both
in cars upon their roads constructed in virtue of their authority.
With the one exception, if it be an exception, contained in the act
of 1854, this grant of power has been continued since. It existed
and now exists in more specific terms than under the act of 1850.
By familiar rules, therefore, we must hold that the authority
existed when this contract was made to convey both passengers
and freight over the defendants' lines, and to contract for cars to
run thereon for the exclusive carriage of passengers and for the
exclusive carriage of freight. Such is the language of the stat-
ute. It is said that this language must be cut down, and the
right to convey property must be read in connection with the pas-
senger, as though it said "passengers with property." It is not
reasonably conceivable that the legislature had such intention.
In the ordinary carriage of passengers upon street railroads, it has
never been thought that passengers carrying small articles, or
such baggage as may be carried by hand, was the occasion for the
use of the word "property" as used in the statute. The regula-
tion for the carriage of such property, that which accompanies the
passenger, even upon commercial roads, is usually by rule of the
company, and not by statutes. It stands upon a different footing
from the carriage of other property, and by common acceptation
is usually denominated "baggage," or, to adopt the English ex-
pression, "luggage," meaning, in popular phrase, that which is car-
ried by the person. No such limited meaning is to be ascribed to
language deliberately used in a statute, where the interpretation
placed upon it was as discriminating freight, quite independent

of passage by its owner. Certainly no one would have supposed that the Johnstown & Gloversville Railroad Company was violating its charter by the carriage of a handbag accompanied by its owner, and yet it was prohibited from carrying anything except persons or passengers. If there had been added to that statute authority to carry property, we think that no one would have thought it limited to such articles as the passenger could carry with him. On the contrary, we should think the legislative intent was to authorize the carriage of both persons and property, each independent of the other. The use of the word "fare" in section 101 of the general railroad law is thought by the appellant to indicate that the carriage of passengers alone is the contemplation of the act. But section 101 deals exclusively with the passenger and the rate of fare he shall be required to pay, and it assumes to deal with nothing else. When the act deals with the grant of power for the transportation of passengers and property, it uses the word "compensation" (section 90), and such is the phraseology of all the legislation upon the subject. The fact that there should be this discrimination in the use of these words indicates an intent upon the part of the legislature to embrace the subject of the transportation of passengers and property, as compensation for the transportation of property was descriptive of it. While "fare," in common acceptation, relates to the passenger, "compensation," as a general term, embraces both, and so was correctly, and evidently advisedly, used in the grant of power.

It is undoubtedly true that the defendants, in whatever right they have acquired to transport passengers or freight or property, have a vested right, which may not be defeated or impaired by legislation. Such is the effect of the decisions. Ingersoll v. Railroad Co., 157 N. Y. 453, 52 N. E. 545; Roddy v. Railroad Co., 32 App. Div. 311, 52 N. Y. Supp. 1025. But we do not apprehend that such fact, nor our present construction of the statute, will entail all of the evils which the appellant insists must follow in the train of such result. It can never happen that the right of use conferred by the franchise granted street surface railroads will result in the operation of long trains for the transportation of either passengers or property. Commercial railroads do not furnish a parallel of use. The latter are constructed upon the property of the corporation, over which, except for purposes of crossing and otherwise in a very limited way, the general public do not travel, and have thereon, except for purpose of transportation, no right. This condition is created for the express purpose of furnishing facilities for the hauling of long consolidated trains, which may be operated for the reason that all else is excluded except such operation. The grant of power to these corporations was conditioned upon the creation of such surroundings as would enable them to so operate without detriment to the public, and without interfering or trespassing upon its rights. No such conditions surround a street surface railroad. The use of the street by the railroad is subordinate to the right of the public therein. In the struggle which is going on for the transportation of persons and property, it must be confessed that street surface railroads are not

backward in the assertion of all the rights which the grant of power confers. But the law is—and the courts may be relied upon to enforce the law—that the right of use of the street by the public is first and primary; the right of use by the street surface railroad is secondary and subordinate. It has the paramount right of use of its tracks, but not the exclusive use; and, when the right of the public or an individual member of it requires the use of the street for a proper purpose, the right of the railroad company must yield thereto, even though the effect be, for the time, to stop the operation of its cars thereon. Black v. Railroad Co., 40 App. Div. 238, 57 N. Y. Supp. 1112. We have at all times been mindful of these conditions, and, when upholding the rights of the railroad in a given case, we have been careful to place a limitation thereon, and have uniformly asserted that whatever be the character of operation by the railroad, and whatever use it sought to make of the street, such use is subject to the authority of the public therein, and the public authority may, whenever necessary for the preservation of the street for street purposes, regulate and restrain the use thereof by the railroad. Roddy v. Railroad Co., supra. We are not at all sure that the transportation in single cars of such property as is the subject of the present contract increases or will increase the burden of use of the street. Such property must be transported throughout the city in cars or upon wagons. Whether the use of the former is more burdensome than would be the latter is, to say the least, an open question. Time will demonstrate. It is sufficient for us now to say that the present use is not shown to be without authority or unlawful, and we must therefore uphold it.

The judgment should be affirmed.

Interlocutory judgment affirmed, with costs. All concur.