In the Matter of the Application of the STILLWATER AND MECHANICVILLE STREET RAILWAY COMPANY, Appellant, v. THE BOSTON AND MAINE RAILROAD COMPANY, Respondent.

RAILROADS — INTERSECTION OF ELECTRIC STREET RAILROAD WITH STEAM RAILROAD — COURT MAY APPOINT COMMISSIONERS TO DETERMINE PLACE AND MANNER OF INTERSECTION UNDER SECTION 12 OF THE RAILROAD LAW. The provisions of section 12 of the Railroad Law (L. 1890, ch. 565, as amd. by L. 1892, ch. 676), providing that "Every railroad corporation, whose road is or shall be intersected by any new railroad, shall unite with the corporation owning such new railroad in forming the necessary intersections and connections, and grant the requisite facilities therefor," and that if the companies cannot agree upon the compensation

to be made therefor or upon the details of the point or manner of such intersection and connection, the same shall be determined by a commission to be appointed by the court as provided in the Condemnation Law, apply to and include the intersection and connection of a street railroad operated by electricity with a railroad operated by steam; since the legislature in undertaking a revision of the Railroad Law (L. 1890, ch. 565) attempted so far as possible to establish a complete system under which all kinds of railroads could be operated and the public interests subserved, and an examination of the statute shows that all of its provisions relating to the intersection and connection of railroads and the interchange of the business of transporting passengers and freight by connecting and intersecting railroads, expressly refer to and include "every railroad corporation" incorporated under the provisions of section 2 of the statute, among which are provisions relating to the incorporation of street surface railroads.

*Matter of Stillwater & M. St. Ry. Co.,* 72 App. Div. 294, reversed.

(Argued June 10, 1902; decided June 27, 1902.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered May 14, 1902, which reversed an order of Special Term confirming the report of commissioners and adjudging that an intersection and connection of the respondent's railroad with that of the petitioner be made, and dismissed the application.

The facts, so far as material, are stated in the opinion.

*David B. Hill* and *Thomas O'Connor* for appellant. The power to compel the intersection and connection of two railroads is not confined exclusively to steam railroads. (*Matter of W. S. & A. R. R. Co.* v. *S. B. & N. Y. R. R. Co.*, 115 N. Y. 442; *P. R. Ry. Co.* v. *S. I. R. Co.*, 71 Hun, 179; *B. R. R. Co.* v. *N. Y., L. E. & W. R. Co.*, 72 Hun, 583; *Connolly* v. *N. Y. C. & H. R. R. R. Co.*, 35 App. Div. 610; *Geneva, etc.,* v. *N. Y. C. R. R. Co.*, 90 Hun, 9; *N. Y., L. E. & W. R. Co.* v. *E. R. Co.*, 31 App. Div. 378; *Kunz* v. *B. H. R. R. Co.*, 25 Misc. Rep. 334; *Matter of R. E. Ry. Co.*, 57 Hun, 56; 123 N. Y. 351; *H. R. T. Co.* v. *W. T. & R. R. Co.*, 56 Hun, 70; *Hudson* v. *L. & B. R. R. Co.*, 178 Mass. 64; *H., etc., R. R. Co.* v. *Philadelphia,* 89 Penn. St. 210.) The right of the appellant's road to connect

with respondent's road cannot be defeated upon the ground of any alleged inconvenience to the latter road. (*B., etc., R. R. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 72 Hun, 585; *People ex rel.* v. *B. & A. R. R. Co.*, 70 N. Y. 569; *L. & N. R. Co.* v. *B. G. Ry. Co.*, 23 Ky. 273; *Beekman* v. *B. & B. B. R. R. Co.*, 89 Hun, 14; *Gallagher* v. *Keating*, 27 Misc. Rep. 138.)   There is nothing in the technical objection that there was no evidence produced showing a present necessity for an interchange of freight between the two railroads. (*Matter of L. & B. R. R. Co.*, 77 N. Y. 557; *Matter of B., H. T., etc., R. R. Co.*, 79 N. Y. 64; *De Graw* v. *L. I. E. Ry. Co.*, 43 App. Div. 503.)

*Lewis E. Carr* and *T. F. Hamilton* for respondent.   Section 12 of the Railroad Law, under which this application was made, does not justify the maintenance of this proceeding. (*Holmes* v. *Carley*, 31 N. Y. 289; *H. I. Co.* v. *Alger*, 54 N. Y. 173; *Matter of O'Neil*, 91 N. Y. 516; *People ex rel.* v. *Lacombe*, 99 N. Y. 43; *Innes* v. *Purcell*, 2 T. & C. 538.)

HAIGHT, J.   This proceeding was instituted by the Stillwater & Mechanicville Street Railway Company to obtain an order permitting it to unite and connect the tracks of its railroad with those of the Boston & Maine Railroad Company in order to facilitate the free interchanging of cars between the two roads.

The Stillwater & Mechanicville Street Railway Company was organized under the General Railroad Law of this state, with the right to transport both passengers and freight, and is operated as an electric railroad by the trolley system.

The Boston & Maine railroad is a foreign corporation, organized under the laws of Massachusetts, and is operating a steam railroad.   It is contended upon its behalf that the statute does not authorize the court to compel a connection of the tracks of the two roads.   The question, therefore, raised for our review is, as to the proper construction of the statute.

The Railroad Law of 1890 (Chapter 565, section 12) pro-

vides as follows : " Every railroad corporation, whose road is or shall be intersected by any new railroad, shall unite with the corporation owning such new railroad in forming the necessary intersections and connections, and grant the requisite facilities therefor ; and if the two corporations cannot agree upon the amount of compensation to be made therefor or upon the line or lines, grade or grades, points or manner of such intersections and connections, the same shall be ascertained and determined by commissioners, one of whom must be a practical civil engineer and surveyor, to be appointed by the court, as is provided in the condemnation law; and such commissioners may determine whether the crossing or crossings of any railroad before constructed shall be beneath, at, or above the existing grade of such railroad, and upon the route designated upon the map of the corporation seeking the crossing or otherwise. All railroad corporations whose roads are or shall hereafter be so crossed, intersected or joined, shall receive from each other and forward to their destination all goods, merchandise and other property intended for points on their respective roads, with the same dispatch as, and at a rate of freight not exceeding the local tariff rate charged for similar goods, merchandise and other property, received at and forwarded from the same point for individuals and other corporations."

It will be observed that this statute contains two provisions, one for the crossing of the tracks of another railroad at, above, or beneath grade ; and the other provides for the intersection of the tracks of such railroads, and upon the making of such connections the roads shall receive from each other and forward to their destination all goods, merchandise and other property intended for points on their respective lines.

The court below seems to have been of the opinion that this statute had reference to steam railroads, and did not pertain to roads operated by electricity. In determining this question it becomes necessary to examine more fully the Railroad Law for the purpose of ascertaining the legislative intent. By referring to section 2 of the act, we find provis-

ions for the incorporation of railroads which is to be accomplished by the execution of a certificate by fifteen or more persons which shall contain the name of the corporation, the number of years it is to continue and *the kind of road to be built or operated.* The section contains other provisions, among which is subdivision 11, which provides that "if a street surface railroad, the names and description of the streets, avenues and highways in which the road is to be constructed." It is thus apparent that the articles of incorporation provided for have reference to all kinds of railroads for public use, including steam railroads, street surface and electric roads.

Again, passing to section 4, subdivision 5, of the act, we find that *every railroad corporation,* in addition to the power given by the General Stock Corporation Law, shall have power "to cross, intersect, join or unite its railroad with any other railroad before constructed, at any point on its route and upon the ground of such other railroad corporation, with the necessary turnouts, sidings, switches and other conveniences in furtherance of the objects of its connection."

Section 34. "Every railroad corporation shall start and run its cars for the transportation of passengers and property at regular times, to be fixed by public notice, and shall furnish sufficient accommodations for the transportation of all passengers and property which shall be offered for transportation at the place of starting, within a reasonable time previously thereto, and at the junctions of other railroads, and at the usual stopping places established for receiving and discharging way passengers and freight for that train; and shall take, transport and discharge such passengers and property at, from and to, such places, on due payment of the fare or freight legally authorized therefor."

Section 35. "Every railroad corporation whose road, at or near the same place, connects with or is intersected by two or more railroads competing for its business, shall fairly and impartially afford to each of such connecting or intersecting roads equal terms of accommodation, privileges and facilities in the transportation of cars, passengers, baggage and freight over

38

and upon its roads, and over and upon their roads, and equal facilities in the. interchange and use of passenger, baggage, freight and other cars required to accommodate the business of each road, and in furnishing passage tickets to passengers who may desire to make a continuous trip over any part of its roads and either of such connecting roads.   The board of railroad commissioners may, upon application of the corporation owning or operating either of the connecting or intersecting roads, and upon fourteen days' notice to the corporation owning or operating the other road, prescribe such regulations as will secure, in their judgment, the enjoyment of equal privileges; accommodations and facilities to such connecting or intersecting roads as may be required to accommodate the business of each road, and the terms and conditions upon which the same shall be afforded to each road.   The decision of the commissioners shall be binding on the parties for two years, and the Supreme Court shall have power to compel the performance thereof by attachment, mandamus, or otherwise."

It will be observed that each of these provisions of the statute, to which reference has been made, expressly refers to *every railroad corporation*, and thereby includes every railroad incorporated under the provisions of section 2 of the act.

The contention is now made that to compel a track connection with steam railroads by electric, or street surface railroads for the interchanging of traffic, would be a burden and a hardship to steam railroads that was not contemplated when the statute was passed ; that to permit connections with steam railroads by the large number of electric railroads which have been, or are being constructed, would result in confusion to the steam railroads and make their operation difficult.

The learned Appellate Division appears to have been impressed with this argument, for it states in its opinion that the proceeding and purpose is new, and obviously opens a field of inquiry of the greatest importance, not alone to railroad corporations, but to the general public, which has an

interest in the streets and highways of towns, villages and cities
of the state; that if the street surface railways are to be
recognized as an integral part of the great system of steam
railroads, that the purpose should be made clear by the legis-
lature. We readily concede that the legislative intent should
clearly appear, but we are not much impressed with the con-
tention that burden and hardship will result to the steam rail-
roads, or that confusion will follow in their operation. The
provisions of the statute authorizing the courts to compel con-
nections, or intersections of tracks between railroads, to our
minds was intended to promote the public interests, independ-
ent of that of the railroad companies. Travelers and the
shippers of merchandise and freight have the right to make
use of all of the facilities provided for in the articles of incor-
poration, and the provisions of the statute pertaining thereto,
in the conduct of their business. This, we think, is made
clear by the provisions of the statute which requires that
all railroad corporations whose roads are, or shall be inter-
sected shall receive from each other and forward to their
destination all goods, merchandise and other property intended
for points on their respective roads, with the same dispatch
and at the rate of freight not exceeding the local tariff rate,
etc. Bearing this purpose in mind, we pass to a considera-
tion of the meaning of the law. As we have seen, by the
statute authorizing the incorporation of railroads, the legisla-
ture contemplated making provisions for all kinds of rail-
roads, street surface, as well as steam railroads. By section
4, subdivision 7, all roads organized under the provisions of
the act were empowered "to take and convey persons and
property on its railroad by the power or force of steam, or
animals, or by any mechanical power." It is true that the
statute contains numerous provisions which apply alone to
steam railroads, and other provisions which apply alone to
electric or street surface roads; but in most of these pro-
visions there is specific reference to either steam or street sur-
face roads. The great body of the statute was intended to
apply to all railroads incorporated under its provisions,

especially so far as those provisions were applicable. The revision of the Railroad Law of 1850 is of recent date and after the street surface railroads in our cities and villages had become very numerous. The legislature in undertaking a revision of the railroad laws attempted so far as possible to establish a complete system under which all kinds of railroads could be operated and the public interest subserved. In construing these statutes it does not become us to shut our eyes to the purposes sought to be accomplished, or the discoveries that have been made and the improvements accomplished in the transportations of the country in recent years. The great steam roads have extended across the continent from ocean to ocean, and from the far north down to the tropics. These roads have become great arteries over which is transported the greater part of the commerce of the continent. It has not been considered profitable or practical for steam roads to be constructed to every village, hamlet or productive district in the country. This, however, is rapidly being accomplished by the numerous electric roads that are in process of construction, or are contemplated. By their means the farmer, the mill owner and the merchandise vendor in distant places may be able to reach the steam railroads, and through them the great markets of our cities, with their merchandise and products, and in this way one road may become a feeder and distributor of the other.

If one electric road were seeking a connection with another road operated by the same power, it would hardly be claimed that the provisions of section 12 did not apply. It is practically conceded that electric roads may be united with other roads of the same character and operated by the same power. But the statute has not limited the courts to the requiring of intersections and connections between roads of the same character. Very likely, electric roads tendering cars to steam roads for transportation should only offer those properly equipped with brakes and couplers, so that they may be taken and transported readily and safely. It may be that additional regulations will become necessary in order that equal privi-

leges, accommodations and facilities may be afforded in connecting and intersecting roads, but all this may be controlled by the board of railroad commissioners, who, under the provisions of section 35, to which we have referred, is given full authority in the premises.

It is said that the rights of the public in the streets and highways of our cities, towns and villages should be protected and that cars loaded with merchandise and freight should not be permitted to be run over street surface railroads. It may be that additional regulations should be provided either by statute or by ordinance, limiting the time in which cars of this character should be permitted to run over street surface railroads, especially in cities and large villages; but that the power exists to run such cars is no longer an open question in this court. This question was elaborately considered in the case of *De Grauw* v. *Long Island Electric Railway Company* (43 App. Div. 502), which case was affirmed in this court on the opinion below (163 N. Y. 597).

Again, bearing in mind the legislative purpose, its intent to our minds appears reasonably clear by the provision " to cross, intersect, join or unite its railroad with any other railroad." The word " cross" is used in connection with the word " connect," and the legislature could hardly have intended that one word should mean one kind of a railroad, and the other another kind. One of the most important rights which the legislature undertook to provide for and to protect was that of the right of one railroad to cross the tracks of another which had previously been constructed. Were it not for this, one road running north and south through the state could absolutely prevent the constructing of another extending east and west. The legislature was careful to make ample provisions for crossings in the same section in which intersections were provided for, and these provisions with reference to crossings have been held to apply to electric and street surface roads crossing steam roads, or of steam roads crossing electric or street surface roads. (*Buffalo, B. & L. R. R. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 72 Hun, 583;

*Port Richmond & P. P. El. R. R. Co.* v. *Staten Island R. T. R. R. Co.,* 71 Hun, 179; affd., 144 N. Y. 445.)

It appears to us that the legislature has clearly empowered the court to order connections such as is sought by the petitioner in these proceedings. The order of the Appellate Division should, therefore, be reversed, and that of the Special Term affirmed, with costs.

PARKER, Ch. J., GRAY, O'BRIEN, VANN, CULLEN and WERNER, JJ., concur.

Order reversed, etc.