(45 Misc. Rep. 222.)

## LUX v. NEW YORK CITY RY. CO.

(Municipal Court of City of New York, Borough of Manhattan, Twelfth District.   November 5, 1904.)

**1. CARRIERS—STREET RAILROADS—PASSENGERS—TRANSFERS—PENALTIES—CUMULATION.**

> Penalties imposed by Railroad Law (Laws 1892, p. 1406, c. 676) § 104, against street railway corporations for refusing to issue transfers entitling a passenger to one continuous trip to any point on any railroad embraced in a consolidation contract, etc., may be cumulated.

**2. SAME.**

> Railroad Law (Laws 1890, p. 1082, c. 565, as amended by Laws 1892, p. 1382, c. 676) provides for the joint operation of street railroads, and section 104 (page 1406) declares that every such corporation entering into such contract shall carry or permit to be carried on roads embraced in the contract any passenger for a continuous trip for a single fare, and also requires the issuance of transfers. *Held*, that such section was not limited to traffic contracts, but embraced leases as well.

**3. SAME—AMENDMENT.**

> Laws 1885, p. 525, c. 305, authorizing traffic contracts between street railway companies, declares (section 4) that every company entering into any contract under the act shall carry or permit any other party to such contract to carry between any two points on the railroad embraced in such contract any passenger desiring to make one continuous trip between the points, for a single fare, and shall issue transfers, and declares that for every refusal to comply therewith the corporation shall forfeit to the party aggrieved the sum of $50.  Such act was repealed by Laws 1892, pp. 1813, 1814, c. 687, § 34, but section 36 thereof declared that the provisions of such chapter, of the stock corporation law, the railroad law, etc., so far as they were substantially the same as the laws existing in 1891, should be construed as a continuance of such laws, modified or amended according to the language employed in the chapter or in the stock corporation law, the railroad law, etc., and not as new enactments. *Held*, that since Laws 1885, p. 525, c. 305, § 4, was exactly similar to Railroad Law (Laws 1892, p. 1406, c. 676) § 104, the repeal of section 4 did not operate to relieve railroad companies having taken advantage thereof from the obligations thereby assumed.

Action by Francis A. Lux against the New York City Railway Company.   Judgment for plaintiff.

Harcourt Bull, for plaintiff.

H. A. Robinson, for defendant.

PER CURIAM.   Plaintiff sues to recover the accumulated amount of five penalties of $50 each for defendant's failure to furnish transfers on demand from one line of street railways to another. Two of such refusals were at Broadway and Twenty-Third street, two at Sixth avenue and Twenty-Third street, and one at Broadway and Fourteenth street, in the borough of Manhattan.   In opposition to plaintiff's claim defendant calls attention to the decisions and opinions in the cases of Topham v. Interurban Street Railway Co., 96 App. Div. 323, 89 N. Y. Supp. 298, and Scudder v. Interurban Street Railway Co., 96 App. Div. 340, 89 N. Y. Supp. 1115, and the provisions of section 34, c. 687, p. 1813, of the Laws of 1892 (known

as the "General Corporation Laws"), repealing chapter 305, p. 525, of the Laws of 1885. By the cases cited the rules are established or approved that such penalties may be accumulated, and that section 104 of the railroad act (Laws 1892, p. 1406, c. 676) is not limited to traffic contracts, but embraces contracts of lease as well. The opinion of Justice Hatch in the Topham Case suggests that if, in that case, it had been pleaded and proved that transfer points had at any time been fixed which would promote the convenience of the public, this defense would have been available by defendant. In the present case the fixing of such transfer points as will promote the convenience of the traveling public is neither alleged not proved. It is true that defendant's answer alleges that there were various other lines of street railway by which plaintiff could have reached his destination, that traffic at the point at which transfers were demanded was greatly congested, and that the effect of not issuing transfers at such points was to divert traffic to other lines and to promote the comfort of the public, and there are admissions by plaintiff to the effect that transfers were obtainable at various other points of the lines in question; but this falls far short of either pleading or proving that the defendant had fixed transfer points which would promote the convenience of the traveling public. The prevailing opinion by Mr. Justice Ingraham in the Topham Case rests upon the fact that in that case plaintiff sought to recover under section 104 of chapter 676, p. 1406, of the Laws of 1892, known as the "Railroad Law"; that the court found that section 104 applied to contracts made in pursuance of section 78 of that law, and that by the provisions of section 78 that section did not apply to any lease in existence prior to May 1, 1891; that the obligation to carry passengers for one fare only applied to passengers on railroads or portions thereof embraced in such contract as referred to in section 104, and that the leases or agreements proved either did not embrace the lines to or from which transfers were sought or were in existence prior to May 1, 1891. The interpretation of the statute in that case is, of course, controlling upon this court, so far as it is applicable to the case under consideration. The reference to the act of 1885 in that opinion is, however, merely obiter, since under the pleading in that case it was immaterial, as stated in the opinion, whether the act of 1885 was repealed or not.

It remains to be considered whether the pleadings and the facts as presented to the court in the present case are so similar as to make that decision determining, or whether they are so distinguished as that the plaintiff may recover. The only points of difference pointed out by plaintiff's counsel are:

First. That the Topham Case was, by the terms of the complaint, brought under section 104, referred to, while in the present case the plaintiff is not limited to any particular law, but may recover under any statute applicable to the case. The only other statute to which attention has been called, however, is chapter 305, p. 525, of the Laws of 1885, which was repealed, as above stated. Plaintiff claims that on general principles of law such repeal does not

relieve defendant from the obligations which that statute imposed so long as it continues to enjoy its benefits, and, further, that by the provisions of section 36 of chapter 687, p. 1814, of the Laws of 1892, section 104, above referred to, is merely a re-enactment of the provisions of the law of 1885, and therefore imposes a continuing obligation upon parties who have taken advantage of that law, in spite of the repeal of the enabling portion thereof. It is difficult to believe that the Legislature, in repealing chapter 305, p. 525, of the Laws of 1885, intended to relieve corporations which had taken advantage of the provisions of that law from obligations which they thereby assumed. In the case of De Grauw v. Long Island R. R. Co., 43 App. Div. 502, 60 N. Y. Supp. 163, affirmed 163 N. Y. 597, 57 N. E. 1108, the court (Hatch, J.) says:

"We are always to look at surrounding conditions when they will aid us in the interpretation of a statute, and so we may consider the fact that the revision commission had before it all of the railroad legislation of this state, both special and general," etc.

And in his opinion in the Topham Case Mr. Justice Hatch says:

"It is the spirit and purpose of a statute which is to be regarded in its interpretation, and if those find fair expression in the statute it should be so construed as to carry out legislative intent, even though such construction is contrary to the literal meaning of some of the provisions of the statute. A reasonable construction should be adopted in all cases where there is doubt or uncertainty in regard to the intention of the lawmakers."

Section 34 of chapter 687, p. 1813, of the Laws of 1892, repealing chapter 305, p. 525, of the Laws of 1885, should therefore be read in connection with section 36 of the same act, which is as follows:

"The provisions of this chapter, and of the stock corporation law, the railroad law, the transportation corporations law and the business corporations law, so far as they are substantially the same as those laws existing in 1891, shall be construed as a continuation of such laws modified or amended according to the language employed in this chapter or in the stock corporation law, the railroad law, the transportation corporations law or the business corporations law, and not as new enactments."

A comparison of section 4 of chapter 305, p. 526, of the Laws of 1885 and of section 104 of the railroad law will clearly show that the obligations imposed by the law so repealed were within the description of the provisions which were intended to be preserved and continued by the saving clause in section 36 of chapter 687, p. 1814, of the Laws of 1892.

Second. The allegations of the complaint material to the questions at issue which are admitted by the answer are: That the Metropolitan Street Railroad Company is a domestic street surface railroad corporation, incorporated in 1895 under the railroad law, and up to April, 1902, engaged in the operation and construction of street railroads. That the defendant was at the times referred to in the complaint a domestic corporation incorporated in 1901 under the stock corporation law, and operating a street surface railroad under the provisions of the railroad law. That on April 8, 1902, and for one year prior thereto, said Metropolitan Street Railroad

Company operated certain lines, including those hereafter referred to as the Broadway Line, the Sixth Avenue Line, the Twenty-Third Street Line, and the Fourteenth Street Line. That the Fourteenth Street Line was leased to the Houston, West Street & Pavonia Ferry Railroad Company, a domestic corporation, about April 23, 1893, by the Twenty-Third Street Railway Company and by the Forty-Second Street & Grand Street Railroad Company, two domestic corporations, and that at the time of such lease said Houston, West Street & Pavonia Ferry Railroad Company operated the Broadway Line. That about April 13, 1900, the Broadway, Twenty-Third Street, and Fourteenth Street Lines were operated by said Metropolitan Street Railroad Company. That the Twenty-Third Street Line was leased to said Houston, West Street & Pavonia Ferry Railroad Company on or about April 25, 1893, by the Twenty-Third Street Railway Company, and that at the time of such leasing said Houston Company operated the Sixth Avenue Line and the Broadway Line. That thereafter the Houston Company was consolidated with said Metropolitan Street Railroad Company. That none of the said companies except the defendant owned at any of the times mentioned in the complaint any street railroad or railroad route except such as were wholly within the territorial limits of the city of New York. That all the streets and railroads mentioned are wholly within the city of New York, which is an incorporated city having more than 800,000 population. That on February 14, 1902, said Metropolitan Street Railroad Company and defendant made a contract and lease whereby all said Broadway, Sixth Avenue, Twenty-Third, and Fourteenth Street Lines were leased to defendant by said Metropolitan Street Railroad Company for a period of 999 years from February 14, 1902, and said lines of street railroad were described in said contract, and at all the times stated were operated by the defendant under the terms of said lease. It will be noted that none of the leases or agreements alleged in the complaint herein were in existence prior to May 1, 1891, and that all the lines from or to which plaintiff sought transfers were embraced in the lease from the Metropolitan Street Railroad Company to defendant of February 14, 1902, and described therein, and were being operated by defendant under the terms thereof at the time of the failure to give transfers complained of. These allegations are admitted by the answer. It appears, however, from the answer and from exhibits, that the Broadway Line was being operated under a lease made prior to May 1, 1891, at the time the lessees thereof leased the Twenty-Third Street Line, and the conditions as to transfers at Twenty-Third street and Broadway were those passed upon in the opinion in the Topham Case; although it may be questioned whether the decision in that case would be strictly controlling under the pleadings herein, the plaintiff relying upon leases made subsequent to May 1, 1891, and his allegations being admitted.

As this case may be distinguished on the first point as to the demands for transfers at all places, and the Scudder Case seems to

control as to all places, with the possible exception of Twenty-Third street and Broadway, judgment will be for the plaintiff for full amount claimed.