(73 Misc. Rep. 503.)

### BETTS v. STATE.

(Court of Claims of New York. March 13, 1911.)

*(Syllabus by the Court.)*

1. OFFICERS (§ 100*)—COMPENSATION—CHANGE OF SALARY.

The Legislature has power, by appropriate language or by an appropriation or supply bill, to change the salary authorized by another statute, however fixed by other officers.

[Ed. Note.—For other cases, see Officers, Cent. Dig. §§ 152-157; Dec. Dig. § 100.*]

2. COURTS (§ 55*)—OFFICERS—COMPENSATION.

The Consolidated Laws did not operate to change the substance of the laws consolidated therein, nor thereby to repeal by implication a provision in a supply bill fixing the salary, which provision had not been consolidated or repealed.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 55.*]

Murray, J., dissenting.

Claim of George L. Betts against the State of New York. Claim dismissed.

This claim is one for the difference in the salary of the claimant, a confidential clerk of the Second Department of the Appellate Division of the Supreme Court, as fixed by the justices pursuant to Laws 1907, c. 560, and as allowed by appropriation acts of the state, being Laws 1908, c. 466, and Laws 1909, c. 432. After the salary had been fixed by the justices of the Appellate Division, as provided by the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

statute referred to, the Legislature made appropriations to cover the salary due at the time of the appropriation, and then provided that the salary thereafter should be "at the rate of $3,500 per year," which was $1,000 less than the amount at which the justices had fixed the salary.

Henry Hirschberg, for claimant.

Edward R. O'Malley, D. E. Brong, and M. H. Quirk, for the State.

RODENBECK, J.   The salary of the claimant was fixed October 1, 1907, by the justices of the Appellate Division, pursuant to chapter 560 of the Laws of 1907, now sections 102, 265, and 272 of the Judiciary Law (Consol. Laws 1909, c. 30), at the rate of $4,500 per year. The language of that act is as follows:

"The justices of the Appellate Division of the Supreme Court in the Second Judicial Department, or a majority of them, may appoint, and at pleasure remove, two confidential clerks, who shall be expert stenographers, to take and copy the opinions and decisions of the court, and to be, under the direction of the justices, the custodians of such opinions and decisions until the same shall become of public record. The salaries of such confidential clerks shall be fixed by the justices of the court. The Comptroller of the State shall cause such salaries to be paid in equal quarterly installments, and shall annually apportion the amount thereof among the counties of the Second Judicial Department, in proportion to the taxable property of such counties respectively, according to the last assessment roll thereof. The amount so apportioned to each county shall be a county charge, and the county treasurer upon receipt thereof shall pay over the same to the Comptroller of the State." Laws 1907, c. 560.

The Legislature in 1908 made an appropriation May 22, 1908, and inserted in the supply bill of that year a clause that the salary thereafter should be at the rate of $3,500 per year. The clause in the supply bill is as follows:

"For compensation for the current fiscal year of two confidential clerks appointed by the justices of the Appellate Division of the Supreme Court in the Second Judicial Department, at the rate of four thousand five hundred dollars per year each until this act becomes a law, and thereafter at the rate of three thousand five hundred dollars per year each, to be refunded to the treasury pursuant to the provisions of chapter five hundred and sixty, Laws of nineteen hundred and seven, eight thousand five hundred dollars ($8,500), or so much thereof as may be necessary." Laws 1908, c. 466, p. 1597.

The questions before the court are whether or not the Legislature had the power thus to reduce the salary of the claimant and whether or not the language employed accomplished such a reduction.

[1] The Legislature, as stated by Judge Vann in Koch v. Mayor, 152 N. Y. 75, 46 N. E. 170, has all the power of legislation that the people of the state can grant, except as it is restrained expressly or impliedly from the exercise of particular powers by the Constitution. Const. art. 3, § 1; Bank of Chenango v. Brown, 26 N. Y. 467; People ex rel. McLean v. Flagg, 46 N. Y. 401. Subject only to the restrictions of the Constitution, the Legislature may therefore increase or diminish the salary of an incumbent of an office. Nichols v. Mac Lean, 101 N. Y. 526, 5 N. E. 347, 54 Am. Rep. 730. The inquiry always is, What restrictions has the Constitution placed upon the

power of the Legislature, either expressly or impliedly? and it is for the claimant here to show that the attempted reduction of his salary by the supply bill was forbidden by the Constitution. People ex rel. Wood v. Draper, 15 N. Y. 532. No provision has been called to the attention of the court bearing upon the subject, except the one that no provision shall be inserted in the supply bill "unless it relates specifically to some particular appropriation in the bill." Const. art. 3, § 22. The provision in the supply bill of 1908, reducing the salary of the claimant from $4,500 to $3,500 a year, clearly related to the appropriation made to pay the salary of the claimant, and does not come within the prohibition referred to. The language in the supply bill, therefore, placing the salary at $3,500, instead of at $4,500, was a valid exercise of legislative power. Koch v. Mayor, 152 N. Y. 72, 46 N. E. 170.

Does the language used in the supply bill of 1908, saying that after May 22, 1908, the salary of the claimant shall be "at the rate of three thousand five hundred dollars per year," indicate an intention on the part of the Legislature to reduce the salary from $4,500 per year to that amount? The only meaning that can be attached to this language is that the Legislature undertook to make a change in the salary. The words cannot be disregarded, and were inserted for some specific purpose. This purpose obviously was to cut down the salary previously fixed by the justices. This intention is shown by the appropriation for 1909, which was at the rate of $3,500 per year, and by the fact that since the supply bill of 1908 the Legislature has not recognized the salary fixed by the justices, but has appropriated a smaller sum.

The appropriation of $1,500 by the Legislature of 1910 for an alleged deficiency did not indicate an intention on the part of the Legislature to increase the salary that had been fixed by the supply bill of 1908. This deficiency appropriation was an additional allowance made to the claimant, and did not propose to raise his compensation to the rate fixed by the justices. Laws 1910, c. 512, p. 1113. The appropriation of a less amount than that at which claimant's salary had been fixed by the justices would not operate to reduce the salary to that amount (United States v. Langston, 118 U. S. 389, 6 Sup. Ct. 1185, 30 L. Ed. 164; Collins' Case, 15 U. S. Ct. Cl. 22; French's Case, 16 U. S. Ct. Cl. 419; Mitchell v. United States, 18 U. S. Ct. Cl. 281); but in this instance there is express language in the supply bill reducing the salary to $3,500 per year.

[2] The re-enactment in 1909 of chapter 560 of the Laws of 1907 in the judiciary law did not operate to restore the original salary of $4,500. The judiciary law was a part of the consolidation of the general substantive statutes of the state, and the members of the board who consolidated the statutes were expressly directed not to make any change in substance. Laws 1904, c. 664, § 2. The provision in the supply bill of 1908 fixing the salary at $3,500 per year was not incorporated in the Consolidated Laws, and was not repealed, so that, when the Consolidated Laws were adopted, it stood as a part of the statute law of the state. The effect of the Consolidated Laws was

also defined in chapter 596 of the Laws of 1909, in which it was provided that:

"The statute law of the state so far as it has been reproduced in such Consolidated Laws   *   *   *   shall be of the same force and effect as they were before the enactment of such Consolidated Laws."

In view of the statute under which the Consolidated Laws were prepared and this construing act, the provisions in the supply bill fixing the salary at $3,500 per year remained in force after the adoption of the Consolidated Laws, and the salary of the claimant has been at the rate of $3,500 per year since May 22, 1908.

The claim in this instance only relates to the compensation to which the claimant was entitled from May 22, 1908, to July 1, 1910, and the decision here is that for that period the salary of the claimant was fixed by the supply bill of 1908 at $3,500 per year, and has not been legally changed, and that the claimant has been paid in full by the state.

The claim should therefore be dismissed.

MURRAY, J. (dissenting). This controversy is submitted on an agreed statement of facts, and is a claim filed to recover the balance of salary alleged to be due the claimant as one of the confidential clerks of the Appellate Division of the Second Department of the Supreme Court.

In the year 1907 an act was passed by the Legislature entitled:

"An act to authorize the Justices of the Appellate Division of the Supreme Court in the Second Department to appoint two confidential clerks and to provide for their compensation."

This act became a law on June 29, 1907, and is known as chapter 560 of the Laws of 1907, and therein it is provided:

"That the Justices of the Appellate Division of the Supreme Court, Second Judicial Department, or a majority of them, may appoint and at pleasure remove two confidential clerks, who shall be expert stenographers, to take and copy the opinions and decisions of the court.   *   *   *   The salaries of such confidential clerks shall be fixed by the justices of the court. The Comptroller of the State shall cause such salaries to be paid in equal monthly installments and shall annually apportion the amounts thereof among the counties of the Second Judicial Department."

This law was repealed by chapter 35 of the Laws of 1909, but its provisions were divided into sections numbered 102, 265, and 272 of the judiciary law, and re-enacted without change of language or purport in the Consolidated Laws of the state.

Pursuant to this law, a majority of the Justices of said Appellate Division by written certificate on or about October 1, 1907, appointed the claimant one of the confidential clerks of the said Appellate Division, and fixed his salary at $4,500 per annum, and the original certificate was filed in the office of the State Comptroller about the same time. Since the date of his appointment the claimant has continuously acted as such confidential clerk, and done and performed all the duties required of him. His appointment has never been revoked or canceled, nor has the designated salary been decreased, altered, or changed by the Justices of the Appellate Division. The

State Comptroller paid the claimant's salary at the rate fixed or designated by the Justices of the Appellate Division from the 1st of October, 1907, to the 22d day of May, 1908, a period of seven months and twenty-two days, but since the 22d day of May, 1908, has refused to pay the full amount so fixed by the Justices of the Appellate Division on the ground that the Legislature has never appropriated the full amount of such salary as designated by the justices so as to authorize him to pay it in its entirety as it was designated to be paid by them.

Prior to said October 1, 1907, the claimant had been employed by the said Appellate Division and the justices thereof as a confidential clerk and expert stenographer at a salary of $3,000 per annum, but with the right to charge an additional fee from those desiring copies of the courts' opinions, and to exact such additional fee from those to whom such copies of the opinions were furnished. On the said 1st day of October, 1907, when claimant's salary was fixed at $4,500 per annum, as above stated, he agreed to relinquish this additional fee or extra charge and to furnish said opinions free of any pecuniary benefit in consideration of the increased salary, and since that time has furnished such opinions free of charge in accordance with the agreement made with the justices at the time of the said increase of salary.

The Legislature of 1908 and 1909 (chapter 465, Laws 1908, and chapter 432, Laws 1909) passed appropriation bills providing for the payment of claimant's salary at the rate of $3,500 per year. During the last session of the Legislature a bill was introduced in the Assembly providing that:

"The salaries of the confidential clerks of the Appellate Division in the Second Judicial Department * * * shall be fixed by the justices of the court at not to exceed $4,000 per annum."

This bill passed both houses of the Legislature, but, failing to obtain the Governor's signature, never became a law.

In the fall of 1909 there was commenced on behalf of the claimant a proceeding in the Supreme Court of this state in Albany County to obtain a peremptory writ of mandamus against the Comptroller of the State, the primary object of which was to compel the Comptroller to pay the relator the difference in salary between that designated by the Justices of the Appellate Division and the amount appropriated by the Legislature. This application was denied by the court at Special Term, Judge Chester writing the opinion, and on appeal was confirmed by the Appellate Division of the Third Department "on the ground the Comptroller, the defendant herein, is not subject to mandamus prior to an appropriation by the Legislature."

After the decision on the mandamus proceeding, the Legislature of 1910 passed chapter 512 of the Laws of 1910, which provided "for compensation of two confidential clerks appointed by the Justices of the Appellate Division of the Supreme Court in the Second Judicial Department, $8,000," which increased the amount previously appropriated from $3,500 to $4,000 for each of the two respective confidential clerks. The claimant has made several applications to suc-

cessive Legislatures to secure a deficiency appropriation to pay the salary as fixed by the Justices of the Appellate Division, but each Legislature has not appropriated an amount to pay the salary alleged to be due him by the claimant on the agreement with the justices, as stated, or to make up the deficiency between the amount appropriated by the Legislature and the yearly salary as fixed by the said justices. When the last Legislature attempted to limit the salary to not more than $4,000 per year for each clerk, as above mentioned, there was also passed an act (chapter 512, Laws 1910), which, in part, reads as follows:

"For deficiency in the appropriation for compensation of two confidential clerks appointed by the Justices of the Appellate Division of the Supreme Court in the Second Judicial Department from October 1, 1907, to September 30, 1910, $1,500."

The claimant alleges that half of this appropriation to wit, the sum of $750, is insufficient to satisfy the deficiency between the salary as fixed by the Justices of the said Appellate Division, pursuant to the provisions of the law as quoted and the amount before appropriated by the Legislature, and contends that there is still unappropriated and unpaid to him for such services until the end of June, 1910, the sum of $1,420.14, and that he has never accepted said appropriation or the money to be received thereunder in full payment of his said salary as agreed to be paid him by the justices aforesaid.

The first question to be decided is that of the power of this court to hear and determine this action. The recent amendment to the Code gives this court jurisdiction of any claim "founded upon an express contract." The act of 1907 authorizes the Justices of this Appellate Division to employ two confidential clerks and expert stenographers. They did so, and the certificate of appointment was filed with the State Comptroller, and the State Comptroller paid them so long as there was no dispute as to the amount each of them were to receive. In Nussbaum v. State, 119 App. Div. 755, 104 N. Y. Supp. 527, it was held that an attorney appointed by a committee of the Assembly pursuant to a resolution authorizing the appointment of counsel to said committee has such a contractual right against the state as enables him to sue in this court. All questions of salary are questions of contract, whether the salary be fixed by law or by order of a department under authority of law. The government contracts to pay the officer his salary, and, failing to do so, is liable to be sued therefor. Patton's Case, 7 Ct. Cl. (U. S.) 362, 371; Mitchells v. U. S., 18 Ct. Cl. (U. S.) 281; Fisk v. Jefferson Police Jury, 116 U. S. 131–134, 6 Sup. Ct. 329, 29 L. Ed. 587; Young v. Rochester, 73 App. Div. 81, see Judge Hiscock's opinion, pages 84, 85 (76 N. Y. Supp. 224, 226, 227).

Expressing the opinion that this court has jurisdiction to hear the controversy, we pass to a consideration of the merits of the claim and the liability of the state thereunder.

The first premise in the line of argument is that the Legislature conferred power on the Justices of the Appellate Division to appoint two confidential clerks and fix their salaries. The Legislature in con-

solidating the laws under a new system of classification did not repeal or change the language or effect of the prior act. It reincorporated the entire language of the first act and again authorized the Justices of the Appellate Division to appoint two confidential clerks and fix their salaries. The subdivision of the original statute into sections, with the power and language unchanged, did not affect the force or the interpretation to be given to the first act. It shows the intention of the Legislature to continue the power conferred upon the justices under the act of 1907. In De Grauw v. Electric Co., 43 App. Div. 502, 506, 507, 60 N. Y. Supp. 163, 166, Judge Hatch, says:

"It is a well-settled canon of construction that the revision of a law does not ipso facto work a change in its construction. To work a change of interpretation, there must not only be a change in phraseology, but such a departure from the language of the former law as indicates an intention to establish a different rule."

See, also, May v. Bermel, 20 App. Div. 53, 56, 46 N. Y. Supp. 622. The mere revision of a statute without change of phraseology does not effect a repeal of the statute. This principle is too well settled to need the citation of authorities. The right of the justices to appoint claimant and fix his salary is conferred by the act of 1907, and reconferred or affirmed by the sections mentioned of the judicial law contained in the consolidation of the general laws of the state. The supply bill of 1908 (Laws 1908, c. 466), which became a law on May 22d of that year, contains the following provision:

"For compensation for the current fiscal year two confidential clerks appointed by the Justices of the Appellate Division of the Supreme Court in the Second Judicial Department at the rate of $4,500 per year each until this act becomes a law, and thereafter at the rate of $3,500 per year each," etc.

It was upon the authority of this act that the Comptroller after the 22d day of said May refused to further pay the claimant the salary at the rate designated by the Justices of the Appellate Division. It will be observed that this act recognizes the power to appoint and fix the salary at the rate designated by the justices. It did not repeal the provisions of the act authorizing the appointment and fixing the salaries, but sought to limit the amount to be paid under it. After the passage of this supply bill of 1908, the incorporation of this original law into the Consolidated Laws continued the power of the appellate justices to appoint and fix the salaries of the confidential clerks as contained in the first act, and the subsequent appropriation bills merely stated the amount appropriated for their pay.

The Legislature of 1910 passed an act appropriating $4,000 a year for their salaries and a deficiency appropriation of $1,500 to pay in part the difference between the amount designated as salary and the amount appropriated. This was an admission, so late as 1910, that the appointment was recognized as legal, and that there was an amount due the claimant which the previous Legislature had not made an appropriation for.

When the Governor failed to sign the bill of 1910 limiting the salary to not more than $4,000 a year, it demonstrated the difference of opinion as to whether the action of the justices in fixing the $4,500

rate was improper or not, and whether the action of the justices fixing the salary without any repeal of their power was not binding on the state. But, be that as it may, the right and power given to the Justices of the Appellate Division to appoint the claimant and fix his salary has never been subsequently repealed, nor has the amount which the justices designated originally as the salary ever been explicitly reduced or changed by formal act of the Legislature, except that in the appropriation bills quoted the amount appropriated has not been equal to the sum fixed by the justices when they acted under the sanction of the law giving them the power to fix the rate of compensation. It is claimed by the state that such insufficient appropriation caused a repeal or changed the amount of salary as fixed by the justices of the Appellate Division. This raises the question, Can the Legislature by insufficient appropriation change or reduce the salary of an · officer of the state whose compensation is definitely fixed by a specific law without a repeal of that law or some legislative expression showing the ineluctable intention that such law should be modified or changed? United States v. Langston, 118 U. S. 389, 393, 394, 6 Sup. Ct. 1185, 1187, 30 L. Ed. 164, was a case in which Langston petitioned the United States Court of Claims to recover an unpaid balance of salary claimed to be due him as Minister to Hayti. The defense was that Congress by appropriating a less sum had indicated its purpose to reduce the salary. It was held the statute which fixed the annual salary of a public officer at a designated sum without limitation as to time is not abrogated or suspended by the subsequent acts appropriating a less amount for his services for a particular fiscal year, which contained no words which expressedly or impliedly modified or repealed it. Mr. Justice Harlan, writing for the court, says:

"Neither of the acts appropriating $5,000 for his benefit during the fiscal years in question contains any language to the effect that such sum should be 'in full compensation' for those years, nor was there in either of them an appropriation of money 'for additional pay' from which it might be inferred that Congress intended to repeal the act fixing his annual salary at $7,500. Repeals are not favored by implication. It cannot be said that there is a positive repugnancy between the old and new statutes in question. If by any reasonable construction they can be made to stand together, our duty is to give effect to the provisions of each. It will not be presumed Congress intended to make a permanent reduction of his salary without indicating its purpose to do so either by express words of repeal or by such provisions as would compel the courts to say that harmony between the old and new statutes was impossible."

Mitchells v. U. S., 18 Ct. Cl. (U. S.) 281, was a case where claimants held office for each of which was a salary fixed by statute, which remained unrepealed. Congress appropriated a sum of money insufficient to pay the full amount of the salary. It was held the liability of the government does not depend upon the amount of money appropriated. The United States can no more discharge its contracts by part performance than can an individual do so. Congress may fail to appropriate money due to a creditor in whole or in part and leave the public officer without authority to pay him. But the liability remains. Questions of salary are questions of contract, and, when the salary is fixed by law, the government contracts to pay that

amount to the incumbent of the office, and is not discharged therefrom by the payment of a part only. In French v. United States, 16 Ct. Cl. (U. S.) 419, it was held, Drake, Chief Justice, writing the opinion:

"When the act of 1879 [Act June 21, 1879, c. 34, 21 Stat. 23] appropriated only $3,600 for the claimant's salary, with no declaration that that sum should be in full compensation for his services for the fiscal year for which the appropriation was made, and with no clause repealing acts inconsistent or in conflict with the provisions of this act, the reduced appropriation did not in any degree affect the law establishing the claimant's salary at $5,000 nor his right to recover that sum. It was simply a case of inadequate appropriation to meet an existing legal obligation"—citing the Graham Case, 1 Ct. Cl. (U. S.) 380; Collins' Case, 15 Ct. Cl. (U. S.) 22; Briggs' Case, 15 Ct. Cl. (U. S.) 48; Freedman's Bank Case, 16 Ct. Cl. (U. S.) 19.

Graham's Case, 1 Ct. Cl. (U. S.) 81, was a case where Congress appropriated a sum less than the amount of the salary established by law for the office which the claimant held. It was determined that the claimant was entitled to the full amount of the established salary. A failure by Congress to appropriate the full amount of the rent reserved in a valid lease does not imply a new lease nor relieve the government from liability for the rent, reserved in the old lease. Freedman's Bank Case, 16 Ct. Cl. (U. S.) 19.

My deduction from these authorities is that the state is liable. The Legislature by definite act conferred upon the Justices of the Appellate Division power to appoint and fix the salary of the claimant. It is not suggested that the justices acted unwisely or abused the discretion given him, nor that the compensation contracted by them to be paid to the claimant was not reasonable and just. It is not claimed that the Legislature did not have power to delegate this authority and vest in the justices a discretion as to the amount to be paid for the services to be rendered. It is the same, in effect, as though the Legislature itself appointed the claimant at a specific salary of $4,500 a year. Can it be maintained that the Legislature, having appointed an officer at a definite salary mentioned in an act, can escape compliance with the act and pay him the sum agreed, without repealing the law, by an insufficient appropriation? Suppose the state needed a man of technical knowledge or rare attainments to do some peculiar or special work for it, and agreed to compensate him in a definite sum as salary for the work to be done. The Legislature passes an act, which becomes a law, authorizing the employment of such a person and contracts and agrees with him for the payment of a specific sum. Can the state escape liability by the Legislature's appropriating an insufficient amount to pay him? Surely it cannot. It would come within the constitutional inhibition impairing the obligation of contracts. The same reasoning, if carried to an extreme conclusion, would permit the Legislature to cut down the salaries of state or constitutional officers by an insufficient appropriation which would be reductio ad absurdum.

The Legislature could have revoked the authority conferred or specified the salary which the claimant should be paid. In my opinion it did neither. The state can no more escape the obligation of its contracts legally entered into than an individual. The state having

authorized the appointment of claimant at a salary to be fixed by the justices, the justices having fixed the salary and the claimant having performed services for the contracted salary, the state is liable for the salary it agreed to pay until the law is repealed or changed.

There being no dispute as to the amount the claimant is entitled to, I am of the opinion that judgment should be given him in the sum of $1,420.14 and against the state for that amount.