THE MAYOR, ETC., OF MACON *et al. vs.* HARRIS.

1. The charter granted to the Macon Street Railroad Company (Acts 1868, pp. 107, 108) contemplates the construction of the road and the running of cars for the use of all the public, and not of any one person, natural or artificial. Under it, the municipal authorities could authorize the propelling of cars through the streets by steam for public use; but they could not do so for private use; and if they sought to do so, a bill to enjoin the authorizing by the city of such use, and to stop the damage which its authority had permitted, on behalf of a property owner whose property was injured, was not without equity.

2. Where such authority to haul coal, etc., for a manufacturing company was sought to be granted to the Street Railroad Company in consideration of an annual payment to be made to the city, and this was done for the benefit of the manufacturing company, which

was a party to the contract, and guaranteed the annual payments, and that it would save the city harmless against any damage arising from the use of steam, there was equity in the bill filed to enjoin such illegal use, as against such manufacturing company.

3. There was also equity in such a bill, as against the Street Railroad Company. It was a party to the contract, was the instrument used to work the injury and confer the benefit, was the actual perpetrator of the wrong, and was an essential party to the injunction.

4. The municipal authorities, the Street Railroad Company and the manufacturing company, charged in the bill to have combined in the diversion of a charter granted for public purposes to private benefit, and to have been parties to a contract for that purpose, were properly joined in the bill as defendants.

5. The other parties defendant to this bill are made so because connected with the two private corporations, or one of them, as president, agent or purchasers, and may be interested in the subject-matters of the suit, as they " claim an interest in or control over the street railroad franchises." Discovery is sought, and an attack is made on the legality of the purchase and title to the corporate franchise of the Street Railroad Company. These parties were proper, on the principle that in equity all parties in interest should be joined.

6. The contract being illegal, its violation could only add additional force to the charge of the use of a franchise for private benefit.

November 11, 1884.

Corporations. Charters. Municipal Corporations. Equity. Parties. Contracts. Streets and Sidewalks-Constitutional Law. Before Judge SIMMONS. Bibb Superior Court. April Term, 1884.

Peter Harris filed his bill against the Mayor and Council of Macon, the Macon Street Railroad Company, the Bibb Manufacturing Company, J. F. Hanson and other individual defendants, alleging, in brief, as follows: The Macon Street Railroad Company was chartered in 1868, and constructed its road through a number of the streets of the city. Under its charter, it could run its cars only for public use. In 1875, a *fi. fa.* was levied on its property and franchises, and one of the defendants, Mrs. Mary J. Hill, became the purchaser, and operated the road for two or three years, when it was abandoned, and most of the

track was taken up. The corporation ceased to exercise its corporate powers, and did nothing further as a company, except that, in May, 1881, a petition on the part of certain persons named therein was placed before the council of the. city, asking for authority to lay a track on a street called Hawthorne street, to enable them to have their freight delivered nearer their places of business. This petition was granted. On May 31, a counter-petition, on the part of persons owning property lying on Hawthorne street, was presented to the council, asking that the permission to lay this track be withdrawn; but action on the latter petition was deferred and never taken. A track was laid on Hawthorne street, and then the Macon Street Railroad Company presented a petition asking permission to run steam engines on their track from the Central Railroad up Hawthorne street to the property of the Bibb Manufacturing Company temporarily, in order to enable that company to get a supply of coal. This was granted, and a committee was appointed to agree upon a contract to be drawn and the terms and restrictions to be imposed. A protest by complainant and others was made against such use of the street; but on October 28, 1881, the committee presented to the mayor and council a contract granting a permanent right to the Street Railroad Company to use steam engines on their track, and this the mayor was authorized to sign by resolution of the council, and accordingly signed it. The body of this contract, bearing date October 26, 1881, between the mayor and council of the city of Macon, parties of the first part, and the Macon Street Railroad Company and the Bibb Manufacturing Company, parties of the. second part, was as follows:

"That for and in consideration of $100.00 to be paid to them annually on the 10th day of January in each year, commencing on the 10th day of January, 1882, the said mayor and council, parties of the first part, has consented and give permanent permission to the said Macon Street Railroad Company and said Bibb Manufacturing Company, parties of the second part, to employ steam in the running of cars upon the line of the said Street Railroad Company, now laid up

Hawthorne street, in the city of Macon, to the grounds of the Bibb Manufacturing Company, known as the old factory; *Provided,* that the train and cars are not run at a greater rate of speed than four (4) miles per hour, and shall always be preceded by a flagman. The said Street Railroad Company, and the said Bibb Manufacturing Company, parties of the second part, do each hereby covenant and agree on their part, jointly and severally, to hold the said mayor and council, party of the first part, harmless from any cost or damage that may arise to them, from any cause whatever, by reason of the granting of the above privilege, or the running of said railroad in said city of Macon. And said party of the second part further covenants and agrees to defend all suits, and pay all damages that may arise, or be brought against said party of the first part, because of the running of said street railroad in said city. Said parties of the second part further covenant and agree to keep in a reasonably safe condition, for travel and use, the street along the line and track of said road, and to keep up and in good repair, and to erect such new crossings along their line of track as they may, from time to time, be required to by the said party of the first part; and if said party of the second part fail to erect, and to keep in repair, such track and crossings, then the said party of the first part shall have the power to have the same done, at the cost and expense of the said party of the second part, which expense they hereby covenant to pay.

"It is distinctly understood to be the purpose of this instrument to set out a contract between the mayor and council of the city of Macon and the Macon Street Railroad Company; and the Bibb Manufacturing Company, by joining therein, intends and does only become, for its own benefit and interests, the guarantor of the said Street Railroad Company in its undertakings therein."

Since that time, trains have been run irregularly over the track. They have not been run in accordance with the contract, but at a higher rate of speed than that agreed upon, and without a flagman, and in several instances cars have been allowed to run down grade without any control. The track is within thirty feet of complainant's residence and within twenty-five feet of another residence on his lot, and causes annoyance, inconvenience and danger to him-self and family. It has decreased the rental value of his property $500 per annum and reduced its actual value $6,000. The contract granting the use of the street to the street railroad for the benefit of an individual or corporation, and not of the entire public, was illegal and a per-

version of the charter of the Street Railroad Company.

The contract was signed by William H. Ross, as president of the Street Railroad Company; and complainant is advised and believes that he and the other individual defendants claim an interest in or control over the franchise of that corporation. The company is entirely insolvent. The prayer was for discovery as to the officers, directors, stockholders and persons controlling the Street Railroad Company and the manner and authority under which they claim such control; that the further use of the track in the manner stated be enjoined; that the mayor and council be enjoined from permitting the use of Hawthorne street for that purpose; that the track be removed from the street; and that recovery be had for the damage sustained.

Demurrers were filed by the defendants, setting up that the bill was without equity and would not authorize the relief prayed for; that complainant had a complete common law remedy; and that there was a misjoinder of parties. The court overruled the demurrer, and defendants excepted.

HILL & HARRIS; BILLUPS & HARDEMAN; B. M. DAVIS, for plaintiffs in error, cited, as to liability of city, Acts 1868, pp. 107, 108; Code, §5079; 69 *Ga.*, 542; 50 *Id.*, 451; 65 *Id.*, 376; 20 *Id.*, 635; 19 *Id.*, 471; Code, §1685; 6 *Ga.*, 130; 14 *Id.*, 327; 25 *Id.*, 536; 32 *Id.*, 291-2; 47 *Id.*, 282; 60 *Id.*, 180; Dill. Mun. Corps., 556, 558, 563; 29 Ills., 279-286; 45 Iowa, 406; 45 *Ga.*, 602; 44 *Id.*, 547; 52 *Id.*, 212; 57 *Id.*, 114; Code, §2222; 34 La. Ann.. 462; 24 Iowa, 455; 36 Penn. St., 99; 27 *Id.*, 339.

As to liability of manufacturing company, Code, §§3072, 3073; 34 Am. R., 89; 28 *Id.*, 607; 1 *Id.*, 431; 19 *Id.*, 631; 24 *Id.*, 754; 10 *Ga.*, 329; Code, §§3257, 2069.

As to liability of Street Railroad Company, Code, §§2962, 3095, 2998, 2997; 42 *Ga.*, 635-6; 28 *Id.*, 399; 15 *Id.*, 61-2; 44 *Id.*, 559; 56 *Id.*, 144, 508; 59 *Id.*, 790; 67 *Id.*, 278; 63

*Id.*, 312; Code, §§3369, 3370, 3371, 3372, 3373; 68 *Ga.*, 541; 50 *Id.*, 451-61; 70 *Id.*, 164; Code, §3002.

L. N. WHITTLE; GUSTIN & HALL, for defendant, cited 67 *Ga.*, 386; 45 *Id.*, 602; 54 Iowa, 463, S. C. 37 Am. R., 216, 224 (notes); 90 N. Y., 122, S. C. 43 Am. R., 146; 42 *Ga.*, 501; Freeman on Executions, §179 and cit.

JACKSON, Chief Justice.

This bill was brought by Harris, against the city of Macon, the Macon Street Railroad Company, the Bibb Manufacturing Company, and others, to enjoin the defendants from running a railroad by steam over Hawthorne street, and to recover damages therefor. To this bill a demurrer was filed separately by the city, and jointly by the other defendants, alleging that there is no equity as against the city, by its demurrer, and none against the other defendants, by theirs. The demurrer was overruled, and the defendants assign for error that judgment.

The bill and demurrers are fully set out in the report at the head of this opinion. Substantially the facts alleged in the bill, and admitted by the demurrers, are: That Harris is a citizen of Macon and the owner of property on the street, and on which he resides; that the Street Railroad Company was chartered for public, and not private purposes and use, and whilst the company, by their charter, could use steam to propel its cars, by and with the consent of the city, that it could not do so for private use; that yet it was now so used by the consent of the city, in that it was employed by the Bibb County Manufacturing Company to convey coal and other materials thereto; that the city contracted with the Manufacturing Company to allow this privilege to the Railroad Company in consideration of the sum of one hundred dollars annually paid it, and in consideration that the Manufacturing Company would save the city harmless from any damage arising

v 73-29

from the use of steam; that the contract is made between the Street Company and Manufacturing Company, parties of the one part, and the city, of the other part; that the Street Railroad Company is insolvent, and that the Manufacturing Company joined in the contract "for its own uses and purposes, and, therefore, became a party to the contract, and guaranteed that the Street Railroad Company would carry out the contract; that the contract has not been performed, but has been violated, in the rate of speed run by the train, and in other specifications; that there is irregularity in the running the train, sometimes several times a day, then not at all on other days; that sometimes they run down the grade in front of complainant's premises uncontrolled by any one; that the train runs within thirty feet of his residence and twenty-five feet of another tenement on his lot, endangering his children; that the improvement of his unimproved land is thus prevented and rents are lessened, and that he is damaged $500.00 annually, and the value of his property diminished $6,000.00; that the guaranty of the Manufacturing Company does not provide for damage to property-holders, so that he could recover directly from the Manufacturing Company, leaving him no redress at law but against the insolvent Railroad Company, which is none at all; that the Railroad Company was constructed over other streets, but not over this, for the public, when it was operating under its charter; that since it was sold out, it is now operated, and this track was laid, and this train run for this private use over this street.

The question made is, is there equity in this bill?

1. Is there equity against the city? That turns on the question, whether it has the power to authorize the Street Railroad Company to construct and run a railroad by steam over one of its streets, for the benefit of a private corporation?

We think that the charter of the Street Railroad Company, to be found in the acts of 1868, pages 107 and 108,

contemplates the construction and running of trains for the use of all the public, and not of any one individual person, either natural or artificial. The facts alleged in the bill and exhibited thereto, which the demurrer admits to be true, make a case where the franchise has been perverted to a private object. It makes no difference how beneficial that object may be to the city, in adding to its coffers by its contract, in the employment of laborers therein, in increase of population or wealth, in the legal aspect of the case. A corporation thus useful and beneficent stands upon the same footing as a natural person, who might use the same capital, employ the same hands, and produce the same beneficial results. A street railroad company, under a charter for carrying passengers and freight, is a body corporate for public use. Private property cannot be taken or damaged by it for private use at all; for public use, it can only be so taken after just compensation. For private use, the city of Macon cannot authorize the propelling of cars through its streets by steam under this charter; for public use, under the charter of this company, it may. If the allegations of this bill be true, the private property of this citizen is damaged by the running of cars by steam over one of the streets of the city, which the city has authorized, for a consideration, to be done, and that not for the use of the public at large, but of the Bibb County Manufacturing Company. The general assembly granted no such authority to the Street Railroad Company, with the consent of the city, and gave to the city no such power over private property within its limits. If it had done so, it would have gone beyond its own constitutional powers, but it has not done, or attempted to do, anything of the sort.

Inasmuch as the city has granted a privilege which it had no power to grant, to the damage of the private property of one of its citizens, there is equity in the bill to enjoin the unwarranted act on the part of the city and to stop the damage which its authority has permitted.

2. There is equity in the bill also against the Manufacturing Company. It is a party to the contract whereby the grant was made and the guarantor that the city should not suffer thereby. It is " for its own benefit and interest " that it made the guaranty. It is the beneficiary of the entire scheme, under the facts alleged in the bill and admitted to be true by the demurrers. The prayer in the bill is for damages in the past as well as protection for the future. Equity does nothing by halves, but brings in all parties in interest and makes a complete decree. The injunction, too, should apply as well to it, as the recipient of the fruits of an illegal contract and a party to it, as to the city, which by its consent gave the power to inflict injury upon one person's private property for the benefit of another person.

3. There is equity against the Street Railroad Company. It is the instrument used to work the injury and confer the benefit. It is one of the parties to the contract. As such party, though unable to respond by reason of insolvency, it is a necessary party also to the bill. As the actual perpetrator of the wrong, the writ of injunction prayed for in the decree asked, would be vain unless it were restrained.

4. All were properly joined in the bill. The nexus that unites them is the contract. The foundation of the case is the same. Taking the bill for true, it is a combination between the three parties to divert a charter, granted to one of them for the use of all the public, to transport passengers or freight or both for all the people, into a private arrangement for the benefit of two private corporations, upon the consideration that the municipal corporation shall receive one hundred dollars per annum and the others hold it harmless for damages which might ensue.

5. The other parties are made defendants because connected with the two private corporations, or one of them, as president or agent or purchasers, and may be interested

in the subject-matters of the suit as they "claim an inter-est in, or control over, the street road franchise.

They are joined, upon the common principle in equity practice that all persons in interest should be joined. Discovery is sought, and an attack is made on the legality of the purchase and title to the corporate franchise of the Street Railroad Company, and they, complainant is advised, claim an interest therein.

6. We deem it unnecessary to consider the charge that the contract with the city as to the manner of running the train has not been complied with; because if the contract itself be illegal on account of want of power in the city to grant the use of steam, and of the Street Railroad Company to use it for the purpose alleged in the bill, there is equity in the prayer to enjoin its further use. This charge merely adds to the grievance, and bears upon the private use to which the franchise has been put, and shows the increased danger and damage to complainant's property.

This opinion, let it be remembered, rests upon the allegations in the bill, which the demurrers concede to be true. On the coming in of the answers and the proof made on the hearing, the facts then elicited may make a different case. We now only decide that, on the facts here before us, there is equity in the bill, and there was no error in overruling the demurrers and declining to dismiss the bill. Constitution, Code, §§5024, 5095; 42 *Ga.*, 501.

Judgment affirmed.