EDWIN F. HATFIELD et al., Respondents, *v.* ISIDOR STRAUS et al., Doing Business under the Firm Name of R. H. MACY & COMPANY, et al., Appellants.

NEW YORK CITY — UNAUTHORIZED PERMIT TO PRIVATE PERSONS TO CONSTRUCT AND OPERATE PRIVATE RAILROAD IN FRONT OF THEIR PREMISES — ADJOINING OWNER ENTITLED TO INJUNCTION. The board of estimate and apportionment of the city of New York has no authority to grant to the proprietors of a department store a permit to lay down private railroad tracks in front of their premises and operate express cars thereon for the conveyance of goods to their store from the street railroads, pursuant to section 242 of the city charter (L. 1901, ch. 466; amd., L. 1905, ch. 629); and an adjoining owner whose property will be damaged thereby is entitled to an injunction restraining the taking of any steps under such permit.

*Hatfield* v. *Straus,* 117 App. Div. 671, affirmed.

(Argued May 23, 1907; decided October 1, 1907.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 6, 1907, which reversed an order of Special Term denying a motion for the continuance of an injunction *pendente lite* and granted such motion.

The facts, so far as material, and the questions certified are stated in the opinion.

*Grenville Clark* and *Edmond E. Wise* for Isidor Straus et al., appellants. The power to grant the consent in question in the manner and by the procedure used is conferred upon the board of estimate and apportionment by section 242 of the revised charter of the city of New York. The method of procedure prescribed in sections 72–74 of the charter and 90 *et seq.* of the Railroad Law for the granting of street railway franchises is not applicable. In conferring the power to grant a consent of this nature the legislature acted within its constitutional powers. (*People* v. *O'Brien*, 111 N. Y. 1; *Schinzel* v. *Best*, 45 Misc. Rep. 455; *Jorgensen* v. *Squires*, 144 N. Y. 280; *Hoey* v. *Gilroy*, 129 N. Y. 132; *People* v. *B. & O. R. R.*, 117 N. Y. 150; *McMillan* v. *K. & E. Co.*, 107 App. Div. 407; *Ackerman* v. *True*, 175 N. Y. 353; *People ex rel. Pumpyansky* v. *Keating*, 62 App. Div. 348; *Deshong* v. *City of New York*, 176 N. Y. 475.) Assuming that the consent was not legally authorized, so that the track constitutes a public nuisance, still the plaintiffs, respondents, have established no such special damage as will entitle them to a remedy by injunction. (Wood on Nuisances [3d ed.], 879; Joyce on Nuisances, § 430; *Hill* v. *Mayor, etc., of N. Y.*, 15 N. Y. Supp. 393; High on Injunctions, § 2.)

*William B. Ellison*, Corporation Counsel (*Theodore Connoly* of counsel), for the city of New York et al., appellants. The permission or license given to R. H. Macy & Co. is not such a franchise as requires to be acted upon under section 72 and the following sections of the charter. (*People* v. *O'Brien*, 111 N. Y. 1; *Schinzel* v. *Best*, 45 Misc. Rep. 464.)

*Arthur H. Masten* for respondents. The board of estimate and apportionment had no power to grant to the defendants the consent described in the complaint for the following reasons, that the proposed construction is merely for the private

14

convenience of Macy & Co., and is in no sense a public use of the street, and that there is no law authorizing the use and occupation of city streets by railroad tracks used for purely private purposes. (*McMillan* v. *K. & E. Co.*, 107 App. Div. 407; *Fanning* v. *Osborne*, 102 N. Y. 441; *Paige* v. *S. R. R. Co.*, 178 N. Y. 102; *Beekman* v. *T. A. R. R. Co.*, 153 N. Y. 144; *Wilcox* v. *McClellan*, 185 N. Y. 9; *Callahan* v. *Gilman*, 107 N. Y. 360; *Cohen* v. *Mayor, etc.*, 113 N. Y. 532; *Potter* v. *Collis*, 156 N. Y. 16; *Glaessner* v. *A. B. B. Assn.*, 100 Mo. 508; *Gustafson* v. *Hamm*, 56 Minn. 334.) Plaintiffs are entitled to maintain this action for an injunction restraining the defendants from taking any steps under the permits granted. (*Wetmore* v. *Story*, 22 Barb. 414; High on Injunctions [4th ed.], 562; Joyce on Nuisances, § 222; *Hindley* v. *Met. R. R. Co.*, 42 Misc. Rep. 56; *Crooke* v. *Anderson*, 23 Hun, 266; *Pierce* v. *Dart*, 7 Cow. 609; *Wakemen* v. *Wilbur*, 147 N. Y. 657; *Flynn* v. *Taylor*, 127 N. Y. 596.)

O'BRIEN, J. The plaintiffs in this action as property owners seek to restrain the defendants from carrying into effect a resolution of the board of estimate and apportionment of the city of New York which authorizes or purports to authorize certain of the defendants to lay down and construct a spur railroad track in front of their premises.

The plaintiffs are residents and property owners in the city of New York. They own and occupy the house and lot at No. 149 West Thirty-fourth street as a private residence, having resided there for many years. The defendants Isidor and Nathan Straus compose the firm of R. H. Macy & Company, and that firm occupies, as lessees, the premises on the northwest corner of Sixth avenue and Thirty-fourth street, eastward of and immediately adjoining the plaintiffs' property, as a large department store. The other defendants are the city of New York and certain of its municipal officers having control of the streets, or whose official action in some form is necessary in order to carry out the purposes of the resolution. The immediate purpose of the action was to restrain the

defendants from obstructing the street near the plaintiffs' residence by carrying into effect the permit, consent or ordinance of the board of estimate and apportionment, which, it is claimed, permitted the proprietors of the department store to lay down railroad tracks and operate express cars thereon for the conveyance of goods to their store from the street railroad in Thirty-fourth street. The only relief demanded in the complaint was a perpetual injunction.

In May, 1906, the firm of Macy & Company made a written application to the board of estimate and apportionment for the consent of the city to construct, maintain and use a single track railroad spur for the purpose of transporting express cars from their premises on the north side of Thirty-fourth street, between Broadway and Seventh avenue, to and from the surface railroad tracks on Thirty-fourth street in front of their premises. In July following the board to which the application was addressed passed a resolution granting such consent. The resolution so passed was to the effect that the consent of the city be and the same was thereby given to the said firm to construct, maintain and use two spur surface railroad tracks, one in front of their premises in the borough of Manhattan and the other on the east side of Webster avenue, south of McLean avenue, to the surface railroad tracks in front of said premises in the borough of the Bronx. The validity of the ordinance so far as it relates to the spur last described is not directly involved in this action, since no property owner or other person interested has raised any question in regard to it. The precise location of the tracks was described in the resolution in detail, and it was stated in the grant that the consent so given should be for a term not exceeding ten years from the time of the granting thereof, and it was provided that the same might be canceled and annulled upon six months' notice in writing to the firm, its successors or assigns, by the board or its successors in authority, and thereupon all the rights of the firm, its successors or assigns, in and upon said street and avenue, should cease and determine. The resolution then proceeds to state

the sums of money which the firm stipulated to pay into the city treasury from time to time as compensation for the privilege or right granted. It was also stipulated that the consent of the board thus given was for the exclusive use of the grantee, and that it should not be assigned either in whole or in part, or leased or sub-let in any manner, and that no title thereto or right, interest or property therein would pass to or vest in any other person or corporation whatsoever, either by the acts of the grantee, its successors or assigns, or by operation of law, without the consent in writing of the city acting by the said board, or its successors in authority. The various stipulations and conditions incorporated in the grant covered seven printed pages of the record, but it is unnecessary to refer to them at greater length, since the power attempted to be exercised by the board is sufficiently indicated by what has been already stated. The prayer of the complaint is to the effect that the defendants be enjoined and restrained from the execution of this ordinance or resolution.

The court granted an injunction, *pendente lite*, which was accompanied by an order to show cause why the same should not be continued until the final judgment in the action. On the return of this order, and after a hearing, the court or judge refused to continue the temporary injunction and ordered that it be vacated. On appeal by the plaintiffs from this order the Appellate Division, by a divided court, reversed the action of the judge at Special Term in refusing to continue the injunction and vacating it, and that court also reinstated the temporary injunction and ordered that it be continued during the pendency of the action, and from this order the defendants have appealed to this court. No appeal lies to this court from such an order as matter of right. It is only upon permission granted by the court below that the defendants are entitled to be heard in this court.

The appeal comes to this court upon two specific questions which have been certified to us by the learned court below, and they are : (1) Whether the board of estimate and apportionment has the power to grant to the defendants the permit described

in the complaint and moving papers pursuant to section 242 of the revised charter of New York, chapter 466 of the Laws of 1901, as amended by chapter 629 of the Laws of 1905, or other sections of the charter; and (2) are the plaintiffs entitled to maintain an action for an injunction restraining the defendants from taking any steps under the permit granted? Our jurisdiction in this appeal is limited to the decision of the questions certified and stated above. Briefly, our inquiry must be directed to the questions as to the right of the plaintiffs to maintain the action and the power of the board, under the section of the city charter, to grant the permission or privilege embodied in the resolution.

There is not, I think, any serious difficulty in the case concerning the right of the plaintiffs to maintain the action. They are residents and property owners upon the street and their premises adjoin those of the defendants operating the department store and for whose private and exclusive benefit the grant was made. It is quite conceivable that the private residences so near to the obstruction may be rendered more inconvenient and uncomfortable in consequence of the existence of the railroad track and the movement of the cars thereon during the night, since the ordinance limits the right to operate the cars to the hours between eight in the evening and five in the morning. It cannot, therefore, be held, as matter of law, that the plaintiffs will sustain no special damages in consequence of the occupation of the street by the railroad tracks, or that the inconvenience of which they complain is only such as is common to the public generally. It seems to me that the plaintiffs' private residence is so situated that the damage to it in consequence of the occupation of the street is special and peculiar within the rule which has sanctioned private actions in such cases. (*Flynn* v. *Taylor*, 127 N. Y. 596; *Wakeman* v. *Wilbur*, 147 N. Y. 657; *Beekman* v. *Third Avenue R. R. Co.*, 153 N. Y. 144; *Fanning* v. *Osborne*, 102 N. Y. 441; *Paige* v. *Schenectady Ry. Co.*, 178 N. Y. 102; *Ackerman* v. *True*, 175 N. Y. 353, 365; *Pierce* v. *Dart*, 7 Cow. 609; *Crooke* v. *Anderson*, 23 Hun, 266; Joyce on

Nuisances, § 222; High on Injunctions [4th ed.], 562; *Wetmore* v. *Story*, 22 Barb. 414.)

The fundamental and important question in the case is with respect to the validity of the ordinance expressing the consent of the city, through its municipal authorities, for the use of the street in the manner described and specified therein. There can be no doubt that the board of estimate and apportionment possessed all the powers concerning the use of the streets by the public and by private parties that were formerly possessed by the board of aldermen. (*Wilcox* v. *McClellan*, 185 N. Y. 9, 17.) There can be no doubt that municipal authorities having the care and control of the streets in a city may authorize their temporary use by private parties for private purposes to a limited extent. The precise limits beyond which that power cannot be exercised have not been very specifically or accurately defined and perhaps cannot be. The governing body in a city may permit private parties to deposit building materials in the streets, to construct and use coal holes, cellarways, areas, vaults under the sidewalks, awnings above and the like. But all these and all similar uses of the public streets for private use are either expressly authorized by statute or sanctioned by the courts as being exceptions to the general rule, borne of necessity and justified by public convenience and custom. The right to such use is given to the general public and enjoyed by all citizens alike. In the present case the privilege has been granted to private parties and is special and peculiar. (*Callanan* v. *Gilman*, 107 N. Y. 360; *Hoey* v. *Gilroy*, 129 N. Y. 132; *Jorgensen* v. *Squires*, 144 N. Y. 280.)

These cases, however, affect only in a very slight way the general rule that the primary purpose of streets and highways is the use of the public for traveling and transportation, and that any encroachment thereon which interferes with such use is a public nuisance. There can be no doubt that an abutting owner in a city has the right of free access to and from his property in the usual way. He may use for that purpose such means of conveyance for the transportation and delivery

of goods and merchandise as are usual and customary, but the right of ingress and egress with railroad cars running upon railroad tracks has not yet, I think, been sanctioned by custom or by law. The claim of a right in that regard is far in advance of any use of the public streets that has heretofore been recognized. It may be argued that if the abutting owner may use carriages, wagons, trucks and even motor cars for the purpose of free access and the transaction of his business, why not permit him to use railroad cars upon a railroad track? Such an argument is misleading, since if carried to its logical conclusion the result would be that the governing body in a city would have the power to surrender the use of the streets to private parties for exclusively private purposes. The courts must draw the line at some point beyond which private interest and convenience must yield to the general public good. The general current of authority on the question concerning the use of public streets in cities indicates quite clearly that the line has been extended and the domain of discretionary power very much expanded by the ordinance adopted in this case. If we are prepared to hold that the defendants are empowered to adopt and carry out the resolution in question, then, as was suggested in the learned opinion of the court below, the same claim of right must be sanctioned when like privileges are granted to all merchants in the city who are similarly situated. In this view the result of our decision in this case must be important and far-reaching to the whole community. We are not concerned with the question whether the exercise of the power embodied in the resolution was necessary or reasonable. The defendants do not attempt to justify the grant upon any such ground, and these considerations are not pertinent to the questions certified to us by the learned court below, and which confer upon this court the only jurisdiction it has over the case.

It is suggested, not by the counsel in the case in their oral arguments, nor in their printed briefs, but among ourselves in the discussion of the case, that the power of the board of estimate and apportionment, under section 242 of the charter, to

grant the permission in question is controlled in some way by the charter powers of the street railroads to operate freight or express cars upon their tracks. If this means that the language of the charter is to be construed as meaning one thing in case the railroads have such powers and another and different thing in case they have not, then it seems to me that such a rule for the construction of a statute is without the sanction of reason or authority. The section of the charter referred to must be construed according to its own terms, and the general charter powers of street railroads have nothing whatever to do with the meaning of the words that the legislature has employed in conferring certain powers upon the city authorities. If the railroads are exceeding their charter powers, the remedy is in the hands of the public authorities in a direct proceeding, where all concerned have the right to be heard. I have refrained from discussing that question in this case, since no railroad is a party, and it would be unwise to intimate anything in regard to such a question when not raised by any one in the case. It is undoubtedly true that the owners of the department store and the city authorities have assumed in their application and in the grant made that the street railroads have the right to operate freight or express cars upon their tracks, otherwise the application would never have been made or granted. In acting upon this assumption they have followed what seems to have been decided by the courts, including this court, which is to the effect that such business is within the powers conferred upon street railroads. (*De Grauw* v. *Long Island Elec. Ry. Co.*, 43 App. Div. 502, 507; affirmed on the opinion below, 163 N. Y. 597; *Matter of Stillwater & M. St. R. Co.* v. *B. & M. R. R. Co.*, 171 N. Y. 589.)

But, conceding the power of street railroads to embark in the business of carrying goods as well as passengers, what has that to do with the meaning of the section of the city charter to which reference will be presently made. Grant that the street railroads may carry goods for hire. Does it follow that the board of estimate and apportionment has the power to

authorize private persons to construct spur railroad tracks and operate railroad cars thereon in front of every department store and warehouse where it is convenient to ship and receive merchandise? If such power exists it should be exercised fairly in favor of all who ask for the privilege and without discrimination. The railroads may have the power to carry goods, but it by no means follows that the city authorities have the power to furnish railroad facilities to merchants who, instead of using trucks and wagons for the shipment and delivery of goods, find it more convenient to use railroad tracks and railroad cars. The power of the railroads to carry goods is one thing, but the power of the city authorities to incumber the public streets with railroad spur tracks is quite another and different thing. No railroad applied for the consent in question and no right was granted to any such corporation. Neither the pleadings, the certified questions nor the arguments at the bar attempt to deal with any question concerning the power of street railroads in that regard.

This case turns upon the question whether the board of estimate and apportionment had the power, under the section of the charter referred to, to enact the resolution in question. There is no claim in behalf of any one that there is any provision of the city charter conferring such power upon the board except the section referred to in the certified question, and the rest of the discussion will be confined to an inquiry as to the powers conferred by that section upon the board. It may be important at the outset of that inquiry to state the rule of statutory construction in such cases that has been adopted by this court in numerous cases, and which in a very recent case is expressed in the following words: " To justify an act which would constitute a nuisance, without making compensation therefor to those who are specially injured and without their consent, the statute must be express or the right to permit such act given by a clear and unquestionable implication from the powers expressly conferred, so that it can be fairly said that the legislature contemplated the doing of the act which occasioned the injury, and it may not be presumed from a general

grant of authority." (*Ackerman* v. *True*, 175 N. Y. 366.)
The argument in behalf of the defendants and in support of
the appeal in its last analysis rests upon the broad proposi-
tion that the statute, section 242 of the city charter, conferred
the power upon the board of estimate and apportionment to
make the grant and enact the ordinance in question. If this
contention is well founded it would follow that the appeal
should be sustained.

The material part of the section is expressed in these words,
omitting terms that are unnecessary and irrelevant: " The
board of estimate and apportionment shall hereafter  *  *  *
have the exclusive power in behalf of the city to grant to
persons or corporations franchises or rights or make con-
tracts providing for or involving the occupation or use of any
of the streets  *  *  *  for railroads, pipe or other conduits
or ways or otherwise for the transportation of persons or prop-
erty or the transmission of gas, electricity, steam, light, heat
or power." Nothing can be found in these words which con-
fers power upon the board in express terms, or by any clear
and unquestionable implication, to authorize private individu-
als to use the streets for the purpose of constructing thereon
spur railroad tracks and operating freight or express cars
thereon. The section does confer upon the board undoubt-
edly the right to grant franchises to persons or corporations
for railroads, but the word "railroads" as used in the section
obviously means those public service corporations for the
transportation of persons and possibly of property, as already
suggested. The ordinance in question grants no right to
construct or maintain a railroad. Is does grant to private
individuals facilities to use the railroads already in operation.
The consent confers no franchise upon any person or corpo-
ration. It does grant to private individuals a revocable
license for ingress and egress to and from their store for the
delivery of merchandise. The grant is limited by the term
of ten years, and is subject to revocation at any time by the
city upon giving the notice specified in the resolution. Such
a license is in no sense a franchise and is not referred to at all

in the section of the charter under consideration. Indeed, the defendants all disclaim any purpose to exercise any franchise; they distinctly insist that the privilege conferred is not a franchise at all. A franchise is property assignable, taxable and transmissible, whereas the consent in question is not assignable and is subject to revocation on six months' notice. So that the power exercised by the board in this case cannot be upheld or justified under the authority to grant franchises. The grant in itself was not of a franchise, and the grantees were not a railroad nor any other corporation described in the section, but private individuals.

Except for the presence in the section of the words " or make contracts providing for or involving the occupation or use of any of the streets," no one, I think, would contend that any power was conferred by the section to authorize railroad tracks to be laid down in the streets and across the sidewalks upon which to operate cars for the transportation of merchandise. The section does confer upon the board the power to make contracts involving the occupation or use of the streets for railroads, but the board in enacting the resolution in question did not exercise any power to make a contract for the use of the streets for railroads. It made no contract with any railroad, and no railroad has any interest in the right granted. No railroad asked for any privilege such as is embodied in the resolution. The privilege was applied for and granted to private individuals to enable them to use railroad tracks for the transportation and delivery of goods, instead of wagons, trucks and the usual conveyances for distributing merchandise in cities. It is said by the learned counsel for the defendants that the power to grant a revocable license for the use of a street, such as is embodied in the resolution of the board, can be " spelled out" in view of the use of the words *to make contracts*. But the courts will not apply the process of spelling out from vague or equivocal words or expressions the power to appropriate the public streets to private use. Even if there were any doubt as to the true construction of such language in a statute, the doubt

would be resolved in favor of the public rather than private persons who claim the right to use public property. The power to surrender the streets, or any part of them, to private use does not exist unless plainly conferred by express words, or by "clear and unquestionable implication." It seems very clear to me that no words can be found in this section capable of being tortured into an authority by the board to authorize every owner of a department store or warehouse to connect his business with the street railroads by building a spur from his store or warehouse to some point on the railroad.

Moreover, the use of the words "make contracts" is subject to the limitations and restrictions which follow in the section. What contracts? Obviously, contracts "for railroads, pipe or other conduits or ways or otherwise for the transportation of persons or property." Not contracts for the use of the streets by private individuals in order that their convenience may be promoted by greater facilities to reach the railroad. In other words, the section refers to contracts relating to municipal interests with public service corporations. The section does not, in terms or by any fair implication, confer upon the board of estimate and apportionment any such power as is attempted to be exercised by the adoption of the resolution in question, and this conclusion is reinforced by the terms of section 20 of the Railroad Law. That section permits individuals and corporations engaged in any lawful private business to lay down and maintain such railroad tracks on or across any street or highway not exceeding three miles in length as shall be necessary for the transaction of its business. In other words, private parties are permitted by that section to do in localities just what the defendants desired to do under the consent in question; but it is very significant that cities are expressly excepted from the operation of that statute. Having excepted cities from the benefits of a law clearly enacted to promote private business and private interests, it is very difficult to impute to the legislature the intention to nullify the exception and confer upon the board of estimate and apportionment the very power which was expressly with-

held in the enactment of this section of the Railroad Law by the use of the words " to make contracts," etc., inserted in the section of the charter under consideration. The section of the Railroad Law referred to and the section of the charter upon which the power to make the grant in question must rest, when read together have almost the force of a prohibition upon the municipal authorities of the city of New York against the exercise of the power to permit the use of the streets contemplated in the enactment of the ordinance in question. If the city charter of New York conferred the same power upon the board of estimate and apportionment that section 20 of the Railroad Law conferred upon the local authorities, why was the exception inserted excluding cities from the operation of the law? If cities already had the power which section 20 conferred upon other localities, what possible reason can be suggested for the exception? It is very plain, it seems to me, that the exception was made for the purpose of taking cities out of the operation of the law, for the very reason that it was not deemed to be wise or proper to incumber the public streets with railroad tracks which would be comparatively harmless on the country roads or in villages sparsely inhabited.

Keeping in view the fact that the questions certified to this court call simply for the construction of a specified section of the city charter, it is not necessary to call attention to the numerous authorities in this State that deal with the general question, concerning the power of the city authorities having control of the streets, to authorize obstructions to be placed therein for the benefit or convenience of private parties. It is quite sufficient to observe that the authorities already cited in support of the right of the plaintiffs to maintain this action also deal with the question of power in the local government to authorize interference with a street by individuals or corporations for their own use and benefit. The general question as to the power of local authorities to permit such obstructions has been dealt with and discussed in the courts of other states in a very broad and comprehensive manner. In those cases the court was not limited, as this court is, to

the mere question concerning the meaning and construction of a section of the city charter or other statute. On the contrary, the discussions in these courts took a very wide range, and the results announced denote the general trend of judicial authority against the power of municipal authorities to permit obstructions of the character involved in this case to be placed in the public streets of cities. (*Glaessner* v. *Anheuser Busch B. Assn.*, 100 Mo. 508; *Gustafson* v. *Hamm*, 56 Minn. 334; *Heath* v. *Des Moines & S. L. Ry. Co.*, 61 Ia. 11; *State* v. *Trenton*, 36 N. J. Law, 79; *Mikesell* v. *Durkee*, 34 Kan. 509; *Mayor* v. *Harris*, 73 Ga. 428.)

A single extract from one of these cases will sufficiently disclose the views of the court in all of them: " Everything which is fairly within the idea of regulating streets, with a view to their use as streets, may be done by corporate legislation. In measuring the extent of the power, the object and purpose for which it was given must always be regarded as the test. Is one of those objects or purposes subserved by permitting one individual to enjoy a use of the highway which is denied to all others? I think not. If such power is conceded, its exercise is limited only by the discretion of the common council, who must be the sole judges of the extent to which obstructions may be placed in the streets. If they can license one to build a railroad across the highway for his own exclusive benefit, of which the public can have no user or advantage of convenience, it is difficult to perceive why they cannot empower another to place therein a structure which would more effectually impede the public passage and maintain it there during their pleasure. How considerable must the obstruction to the way become, before the judgment of the common council can be controverted, and the judicial arm interpose? A grant to every one on the street of a like nature with that now resisted would render the highway well nigh impassable. The right to license one necessarily implies authority to license all, and thus municipal corporations under the general power to regulate streets become the source from which franchises to favored individ-

uals in the public ways derive their existence.  Streets and highways are intended for the common and equal use of all citizens, to which end they must be regulated.  An appropriation of them to private individual use from which the public derive no convenience, benefit or accommodation is not a regulation but a perversion of them from their lawful purposes and cannot be regarded as an execution of the trust imposed in the city authorities.  * * *  The power of the common council to permit owners of stores or other buildings to erect awnings over streets, or to leave boxes on the sidewalks, under certain regulations rests upon a different principle and has been sanctioned by usage as the exercise of a right in the owner of the fee, not inconsistent with the public right of passage."  (*State* v. *Trenton, supra.*)

The order appealed from should be affirmed, with costs, and the first question answered in the negative and the second question answered in the affirmative.

EDWARD T. BARTLETT, J.  I agree in the result of Judge O'BRIEN's opinion; I also adopt as part of this memorandum the opinion of Mr. Justice CLARKE in the Appellate Division. This case involves questions of far-reaching importance.  The defendants R. H. Macy & Company claim to have obtained the consent of the city of New York, through its board of estimate and apportionment, to construct, maintain and use two spur surface railroad tracks, as follows: A spur track from the northerly surface railroad in West Thirty-fourth street, between Broadway and Seventh avenue, in the borough of Manhattan, across the sidewalk and into the store of R. H. Macy & Company on the northerly side of West Thirty-fourth street; also a spur track from the easterly surface railroad track in Webster avenue, in the borough of the Bronx, between Two Hundred and Thirty-sixth street and McLean avenue, in the said borough, to the building of R. H. Macy & Company on the easterly side of Webster avenue north of the northerly side of Two Hundred and Thirty-sixth street.  The distance between these termini, according to the official maps

of the city of New York, is at least ten miles, allowing twenty blocks to the mile. These spur tracks are to be connected with the street surface railroad tracks in West Thirty-fourth street and Webster avenue, respectively, and R. H. Macy & Company are authorized, subject to certain restrictions, to transport their goods, wares and merchandise from their downtown place of business to their distributing station in the borough of the Bronx over these many miles of intervening street railway tracks.

The plaintiffs, as owners of a private residence located immediately west of the store of R. H. Macy & Company on West Thirty-fourth street, object to the construction of the spur track in the vicinity for good and sufficient reasons, which have been duly considered in the opinions to which reference has already been made. There is, however, a broader question which affects the property holders of the city of New York and calls for careful judicial scrutiny. Are our already overcrowded streets and railroads to have imposed upon them an additional easement, viz., the transportation of freight — of goods, wares and merchandise — and that, too, not by legislative grant, but by the consent of the board of estimate and apportionment? It is argued that this consent of the board is not a franchise. It runs for ten years and can be renewed; the facts that it is non-assignable and revocable do not militate against the legal conclusion that the consent is to all intents and purposes in the nature of a valuable franchise. This court has held that the right to construct and operate a street railway is a franchise which must have its source in the sovereign power. Also that the legislative power over the subject has this limitation: the franchise must be granted for the public, not for private purposes. (*Fanning* v. *Osborne*, 102 N. Y. 441.) The proposed spur tracks, if constructed as contemplated, would clearly be a public nuisance. Whether the consent of the board of estimate and apportionment be regarded as in the nature of a franchise or as a license, it is absolutely void. (*Potter* v. *Collis*, 156 N. Y. 16.) If the claim of the appellants were to be sustained, then,

as suggested in the opinions, the proprietors of every depart-
ment store in the city would assert the right to lay spur tracks
and transport freight through the already overcrowded streets.

Judge O'BRIEN has clearly pointed out the scope of the
present inquiry in view of the questions certified. The first
question requires this court to determine whether the board of
estimate and apportionment had the power to grant the permit
under the charter of Greater New York; the second question
involves the power of plaintiffs to maintain this action. If the
board had no power to grant the permit and the plaintiffs are
entitled to maintain this action, then the injunction must stand.
If the contrary result is reached, the present state of the
record does not raise the question whether the trolley lines
involved are authorized to transport freight in the streets of
the city of New York.

The names of the companies over the tracks of which it is
contemplated to conduct this freight traffic and the charters
under which they are operated do not appear in the record
before us. The tendency of the modern trolley line to carry
freight through the crowded streets of large cities, in the
absence of charter authority, is a growing evil.

. I vote for affirmance; the first question to be answered
in the negative and the second question answered in the
affirmative.

CHASE, J. (dissenting): The facts are sufficiently stated in
the opinion of Judge O'BRIEN, except that it may aid in
interpreting the purpose and character of the consent given
to the defendants by adding that the defendants have a drive-
way from Thirty-fourth street into their department store.
The entrance is about fifty-three feet easterly from the line
between the plaintiffs' and defendants' property, and at such
driveway the sidewalk and curb are depressed to permit
wagons to pass in and out of said store. The defendants in
transporting goods from their department store to said dis-
tributing station in the Bronx use five heavy trucks, each
drawn by a team of horses, and they pass over said sidewalk

**15**

in and out of said department store at irregular intervals. Express cars are run over the street surface railroads in the city of New York. The defendants have arranged to have all of the goods heretofore conveyed to said distributing station in said five trucks transported in one express car to be run over said street surface railroads and the spur track is necessary to enable the defendants to load said car within their said store. The work of transporting such goods with the present business of the defendants can be performed with one trip of said car each way daily and the consent provides that the car can only be moved over the spur track in Thirty-fourth street between the hours of eight o'clock in the evening and five o'clock in the morning. The proposed spur track will be wholly opposite the real property of the defendants.

It is conceded that the right to construct and operate a street railway is a franchise which must have its source in the sovereign power and that the legislative power over the subject is also subject to the limitation that the franchise must be granted for public and not for private purposes or at least public considerations must enter into every valid grant of a right to appropriate a public street for railroad uses. This court has frequently so held. (*Fanning* v. *Osborne*, 102 N. Y. 441; *Paige* v. *Schenectady Railway Co.*, 178 N. Y. 102.) I agree with Judge O'BRIEN that the consent given to the defendants on behalf of the city is not a franchise but a license to the defendants as private parties to use the spur track to transfer the car from the street surface railroad tracks to and from their abutting property, but as the spur track is confined to that part of the street immediately adjoining and in front of the defendants' real property I do not agree with him in so far as he holds as a matter of law that such consent authorizes an unreasonable use of a street by abutting owners. The general rule that streets and highways are solely for passage by the public is subject to some exceptions born of necessity and public convenience. The primary purpose of streets and highways is for use. If a physical or other barrier should be erected on all lot lines

adjoining streets and highways, such streets and highways would become wholly useless. There is no prohibition against an owner of lands abutting a highway from passing to and from the same. Such right of passage is not confined to the owner of the abutting lands, but extends to all persons lawfully desiring to pass to and from such abutting lands and also to the transportation of all goods, wares and merchandise in any way lawfully used in connection therewith. An owner of a building abutting on a street may not only freely pass to and from the same but incident to his ownership he may use the street and sidewalk in front of his property as a place to load and unload his goods and for all usual and necessary purposes of his business although it may occasion a temporary obstruction, provided he does not interfere unreasonably with the public right. (*Jorgensen* v. *Squires*, 144 N. Y. 280; *Welsh* v. *Wilson*, 101 N. Y. 254; *Callanan* v. *Gilman*, 107 N. Y. 360.)

It is competent for the legislature to authorize abutting owners to temporarily deposit building material in the streets (*Callanan* v. *Gilman*, *supra*); also to authorize abutting owners to build within the street lines underground vaults (*Deshong* v. *City of New York*, 176 N. Y. 475), area ways (*Devine* v. *National Wall Paper Company*, 95 App. Div. 194; affd., 182 N. Y. 565), stepping stones (*Wolff* v. *District of Columbia*, 196 U. S. 152; *Robert* v. *Powell*, 168 N. Y. 411) and many other things which tend to the convenient and beneficial enjoyment of abutting property. (*Jorgensen* v. *Squires, supra*.)

In the *Robert* v. *Powell* case this court say: " There are some objects which may be placed in or exist in a public street such as water hydrants, hitching posts, telegraph poles, awning posts or stepping stones such as the one described in this case, which cannot be held to constitute a nuisance. They are in some respects incidental to the proper use of the street as a public highway. The hitching post for instance, in front of a private residence is intended not only for the convenience of the private individual but for the safety of the public as

well, since it is intended to guard against accidents resulting from runaway teams or horses. It is quite conceivable that a shade tree located within the boundaries of the street or highway may cause an accident or injury to a private individual using the street. But it does not follow that it constitutes a public nuisance in the highway. * * * While it is said that these cases involved only the question of liability on the part of a municipality for negligence, they also decided that the existence of objects of this character in the streets is lawful."

This court in *Jorgensen* v. *Squires* (*supra*) say : " While such uses may restrict somewhat the free and unembarrassed use of the streets for pedestrians, the general interests are subserved by making available to the greatest extent valuable property, increasing business facilities, giving encouragement to improvements and adding to taxable values."

In the use of streets, sidewalks are built for pedestrians and spur walks are commonly constructed therefrom to residences and other property. Spur roads are run across sidewalks to stables and business property. If the express car to be used in transporting the defendants' goods, wares and merchandise should be constructed with sufficient power as a motor car, I assume there would be no question as to the legal right of the defendants to run the car over the sidewalk on their driveway into their department store as trucks with teams are now driven therein.

I have assumed that the street surface railroads have authority to run express cars on their tracks. It is important to inquire into such power because in interpreting the city charter for the purpose of answering the first question submitted to us it is necessary to consider the circumstances and conditions affecting the legislature at the time the charter was enacted. At that time street surface railroad cars were run in many of the streets of the city of New York. At that time also this court had held that the legislature had power to grant to street surface railroads the right to transport freight or passengers or both over its tracks. (*De Grauw* v.

*Long Island Elec. Railway Co.*, 43 App. Div. 502; affd. on opinion below, 163 N. Y. 597.) Subsequently in *Matter of Stillwater & M. Street Ry. Co.* v. *B. & M. R. R. Co.* (171 N. Y. 589) this court say: "It is said that the rights of the public in the streets and highways of our cities, towns and villages should be protected and that cars loaded with merchandise and freight should not be permitted to be run over street surface railroads. It may be that additional regulations should be provided either by statute or by ordinance, limiting the time in which cars of this character should be permitted to run over street surface railroads, especially in cities and large villages; but that the power exists to run such cars is no longer an open question in this court. This question was elaborately considered in the case of *De Grauw* v. *Long Island Electric Railway Co.* (43 App. Div. 502), which case was affirmed in this court on the opinion below (163 N. Y. 597)."

The corporations over whose roads it is proposed to run an express car are not parties to this action, but it is assumed by the parties, or at least not disputed, that they have been given the right to run express cars over their tracks. I admit that running freight and express cars on street surface railroad tracks through the cities and villages of our state may in itself, wholly apart from the question of spur tracks, become a serious menace to the public at large, but the right to grant to corporations authority to run such cars is given by statute, and any prohibition or regulation thereof must come from the legislative branch of the government. For the purpose, therefore, of answering the first question I think we should assume, as I have assumed, that the street surface railroads over which the express car between the department store and the distributing station of the defendants is to be run, have the right to run such express car thereon.

The right to lay pipes or other conduits for the transmission of gas, electricity, steam, light, heat or power, like the right to lay tracks for cars in which to transport passengers and property, must be granted for public use, but for the purpose

of using the gas, electricity, steam, light, heat and power individual members of society constituting the public are granted permission to excavate in the public streets and highways and permanently lay pipes and other conduits to connect their abutting property with the pipes and other conduits in the streets and highways through which to take the gas, etc., for private use. Unless spur tracks of some kind are allowed to the owners of abutting property, the loading and unloading of express cars must necessarily be confined to the public streets, and thus public travel will be delayed and the general public as well as individuals be greatly inconvenienced.

For the purpose of confining abutting owners to a reasonable use of the public streets it is no more necessary to require that express cars be loaded and unloaded in the streets and highways than it is that individual consumers of gas or water be required to take the same in some way from the distributing pipes in the public streets. A reasonable use of all public service corporations would seem to require that abutting owners of property be allowed to make such reasonable connection with the public service pipes, conduits or tracks as will tend to public utility. The defendants' goods, wares and merchandise must be transported from place to place, and I cannot say that running one car over a spur track from the street surface railroad would be more inconvenient to the public than running heavy motor cars or trucks drawn by horses at irregular intervals over the defendants' driveway. If such a use of the street tends to public benefit it cannot be said to be an unreasonable use thereof. No actual permanent taking of a portion of the street for private purposes is proposed. The board of estimate and apportionment in their discretion may have found that the use of such spur track within the hours mentioned would relieve a congested street and generally tend to the public good. Where the power to grant street privileges or franchises is conferred upon a municipality the exercise of the power is discretionary with the municipality and its action is not as a rule subject to control by the courts. (Am. & Eng. Ency. of Law

[2nd ed.], vol. 15, page 153.) The legislative control over public streets and highways may be delegated to the governing body of a municipal corporation. (*Hoey* v. *Gilroy*, 129 N. Y. 132.) Such power seems by the plain language of section 242 of the city charter, as amended by chapter 629 of the Laws of 1905, to have been granted to the board of estimate and apportionment. The material parts of that section are as follows: "The board of estimate and apportionment shall have * * * control of all the streets, avenues, highways * * * within or belonging to the city; except as in this act otherwise provided. The powers by this act granted to the board of aldermen with respect to the streets, avenues, highways, * * * which are within or belong to the city shall be subject to such control of the board of estimate and apportionment. If and when the board of estimate and apportionment shall deem it proper in the case of any application or matter affecting any street, avenue, highway * * * within or belonging to the city, whether the board of aldermen or any other department or officer shall have acted or omitted to act, the board of estimate and apportionment may itself originally act, * * * and if and when the board of estimate and apportionment shall so act or exercise such control, such action or control shall be fully and finally operative, notwithstanding any resolution, ordinance, grant or other action adopted or had by the board of aldermen or any other department or officer of the city or any omission to act on the part of the board of aldermen or other department or officer. The board of estimate and apportionment shall hereafter * * * have the exclusive power in behalf of the city to grant to persons or corporations, franchises or rights or make contracts providing for or involving the occupation or use of any of the streets, avenues, highways * * * within or belonging to the city, whether on, under or over the surface thereof, for railroads, pipe or other conduits or ways or otherwise for the transportation of persons or property or the transmission of gas, electricity, steam, light, heat or power, * * * *"

The board of estimate and apportionment are given "*the control of all the streets.*" When "*in the case of any application or matter affecting any street*" such board may "*itself originally act,*" and its action is "fully and finally operative, notwithstanding any resolution, ordinance, grant or other action adopted or had by the board of aldermen or any other department or officer of the city." In connection with such general control of the streets said board is given express and exclusive power "to grant to *persons and corporations* franchises or rights *or make contracts* providing *for or involving the occupation or use* of any of the streets   *   *   *   for the transportation of *persons or property.*" This statute, by its plain language, authorizes the making of contracts separate and distinct from that of granting a franchise or right.

The consent involved in this action is a contract involving the use of Thirty-fourth street by the defendants within the meaning of the section quoted. Doubtless, the reason why no general authority is given in the Railroad Law for individuals, associations or corporations to lay down and maintain spur tracks necessary for the transaction of business with railroad corporations is that it was deemed best to leave all questions relating to such spur tracks, and as to whether they should be allowed, and, if so, upon what terms and conditions, to the city officers or board having control of the streets.

I think the first question should be answered in the affirmative and the second in the negative, and that the order appealed from should be reversed.

VANN, J., concurs with O'BRIEN and EDWARD T. BARTLETT, JJ.; HISCOCK, J., concurs with O'BRIEN, J.; CULLEN, Ch. J., and HAIGHT, J., concur with CHASE, J.

Order affirmed.