GREELEY SIGHTSEEING COMPANY, Plaintiff, v. EDWARD RIEGEL-
MANN and HENRY HESTERBERG, Defendants.

RIALTO SIGHTSEEING & TRUCKING CO., INC., Plaintiff, v. EDWARD
RIEGELMANN and HENRY HESTERBERG, Defendants.

JOSEPH LIEBERMANN, Plaintiff, v. EDWARD RIEGELMANN and
HENRY HESTERBERG, Defendants.

Supreme Court, Kings County, July, 1922.

Injunctions — owner's easement of access to property — lowering of
sidewalks and maintaining driveways — when borough president has
no authority to revoke permits — lessees protected by permits issued
to them — borough of Brooklyn — Greater New York charter, § 391 —
Code of Ordinances, art. 15, § 184.

The natural easement which an owner has of access to his property and egress
therefrom and reasonable use thereof for business purposes may be exercised
even at the risk of temporary inconvenience to persons traveling the highways.

The plaintiffs, engaged in the business of transporting patrons in sightseeing
buses from various points of the city of New York to Coney Island, are the
tenants under long-term leases of various places fronting on Surf avenue,
which at great expense they have adapted to their requirements as a terminal.
After years of operation under permits obtained from the president of the
borough of Brooklyn for lowering the sidewalks and maintaining driveways
on their respective properties, the borough president suddenly and at the height
of the summer season served notice upon said lessees to recurb their sidewalks
and abolish the driveways, and promptly thereafter took measures to enforce
his order. Upon continuing an injunction *pendente lite* granted in actions to
enjoin said borough president from restoring the curb in front of plaintiffs'
premises over which their motor vehicles pass, *held*, that section 391 of the city
charter, which provides that no disturbance of the surface of any street for any
purpose shall be made until a permit is had from the president of the borough,
gave him no authority to revoke permits.

The duty of the borough president is merely that of supervising the method of
access when it involves the removal of the curbing.

The objection that the ordinance (Code of Ordinances, art. 15, § 184) provides
for application by the owner for the permits referred to cannot be urged by the
borough president after having granted the permits and after the lessees in
reliance upon them have invested large sums of money in a legitimate enterprise
that is a service and a convenience to a large element of the public.

MOTION for an injunction *pendente lite.*

*William A. Blank,* for plaintiffs.

*Joseph Reilly,* for the city of New York and the defendants.

GANNON, J. Plaintiffs ask an order enjoining the borough
president of the borough of Brooklyn from interfering with their
operation of motor vehicles and from restoring the curb in front
of their premises over which the vehicles pass, pending the trial

of the action.  They are engaged in the business of transporting patrons in sightseeing buses from various points in the city to Coney Island.  Owing to objection to receiving and discharging their passengers upon the highways, plaintiffs allege that they procured long-term leases upon various places fronting on Surf avenue, which they adapted at great expense to their requirements as a terminal, and that permits were obtained from the borough president to lower the sidewalks and maintain a driveway on their respective premises.  Travel by motor bus is a recognized and popular as well as sanitary and comfortable method of transportation.  Its vogue has grown tremendously, and kindly opinions of its functionings have been stimulated and encouraged by the city. Plaintiffs complain further that the borough president suddenly and at the height of a summer season, after years of operation under the permits, served a notice upon them and upon other concerns operating motor buses to recurb their sidewalks and to abolish the driveway, and thereafter began prompt physical measures to enforce his order.  The borough president bases his action upon the alleged dangerous condition into which the driveways had lapsed and to the fear of injury and discomfort of pedestrians along Surf avenue.  The former allegation is strenuously denied by plaintiffs, who claim that their driveways were in perfect condition until attacked by the pickaxes of the city officials. It is to be noted that all of the bus owners fell under the ban at once, but that other property owners with driveways have not suffered official disfavor.  They urge that it is not likely that all of the driveways of bus owners should be in a dangerous condition of unrepair, while all of the driveways of other property owners should not be subject to criticism.  There is no doubt that an owner has a natural easement of access to his property and of egress from it, and that this may be exercised even at the risk of temporary inconvenience to persons traveling the highways.  This natural easement may serve not only his personal comings and goings, but the reasonable use thereof for business purposes.  In the case of *Hatfield* v. *Straus*, 189 N. Y. 208, 214, we find the following language:  " There can be no doubt that an abutting owner in a city has the right of free access to and from his property in the usual way.  He may use for that purpose such means of conveyance for the transportation and delivery of goods and merchandise as are usual and customary, but the right of ingress and egress with railroad cars running upon railroad tracks has not yet, I think, been sanctioned by custom or by law.  The claim of a right in that regard is far in advance of any use of the public streets that has heretofore been recognized.  It may be argued that if the

abutting owner may use carriages, wagons, trucks and even motor. cars for the purpose of free access and the transaction of his business, why not permit him to use railroad cars upon a railroad track?" Also: "In the use of streets, sidewalks are built for pedestrians and spur walks are commonly constructed therefrom to residences and other property. Spur roads are run across sidewalks to stables and business property. If the express car to be used in transporting the defendants' goods, wares and merchandise should be constructed with sufficient power as a motor car, I assume there would be no question as to the legal right of the defendants to run the car over the sidewalk on their driveway into their department store as trucks with teams are now driven therein." And again: "The general rule that streets and highways are solely for passage by the public is subject to some exceptions born of necessity and public convenience. The primary purpose of streets and highways is for use. If a physical or other barrier should be erected on all lot lines adjoining streets and highways, such streets and highways would become wholly useless. There is no prohibition against an owner of lands abutting a highway from passing to and from the same. Such right of passage is not confined to the owner of the abutting lands, but extends to all persons lawfully desiring to pass to and from such abutting lands and also to the transportation of all goods, wares and merchandise in any way lawfully used in connection therewith." I do not doubt that this easement, with its accompanying rights, as defined above, passes to a lessee of the property while he is in lawful possession. Defendant relies upon the authority given him by section 184 of article 15 of chapter 23 of the Code of Ordinances, but I think we are referred further back to section 391 of the city charter. This section provides that no disturbance of the surface of any street for any purpose shall be made until a permit is had from the president of the borough, and it, therefore, outlines the authority of the power of the borough president. There is nowhere in that section any authority for the action now attempted, and indeed I do not read the ordinance in question to give him such authority. The only reference to a revocation is found in subdivision C, and it is authorized upon the failure to comply with the terms of the permit. I think it is clear that the borough president has not the power to refuse or deny the privilege of access, but that he is charged with the duty of supervising the method by which the access is had when it involves the removal of the curbing. As was said in *Matter of Singer-Kaufman Realty Company* (decided to-day), the law does not fix the responsibilities upon the borough president which apparently he has assumed. If the plaintiffs are

acting unlawfully or without regard to public safety the police department and the courts will function. As to the objection that the ordinance provides for application by the owner, I think that expression should be properly construed to mean the party in interest and in possession, and, at any rate, such·objection cannot be urged by the borough president after he himself has granted the permits to the lessee, and after they, in reliance upon such permits, have invested large sums of money in a legitimate enterprise that is a service and a convenience to such a large element of the public There is no question of peril involved because I am not referred to any accident during an operation of almost three seasons. The injunctions contained in the orders to show cause will be continued pending trial.

Ordered accordingly.